Malone, C.J.,
dissenting: Derek Schmidt, in his official capacity as the attorney general of Kansas, and Stephen M. Howe, in his official capacity as the district attorney of Johnson County, collectively referred to hereinafter as the State, appeal the district courts order granting a temporary injunction staying the enforcement of the Kansas Unborn Child Protection from Dismemberment Abortion Act (“the Act”). The Act was to go into effect on July 1,2015. L. 2015, ch. 22. The plaintiffs, Hodes & Nauser, MDs, P.A., Herbert C. Hodes, M.D., and Traci Lynn Nauser, M.D., filed a petition in *330 Shawnee County District Court seeking declaratory and injunctive relief from the Act. On June 30, 2015, the district court granted a temporary injunction staying enforcement of the Act until further order of the court or until a final judgment is entered in the matter.
In granting tire temporary injunction, the district court ruled, for the first time in a Kansas court, that “Sections 1 and 2 of the Bill of Rights of the Kansas Constitution independently protects the fundamental right to abortion.” The district court further ruled that “Plaintiffs have established a substantial likelihood of success on their claims that the Act violates their patients' right to abortion protected under Sections 1 and 2 of the Kansas Constitution Bill of Rights.” Today, our equally divided court upholds the district court’s ruling, with seven judges voting to affirm the district court on both issues, although their reasoning for reaching this result is not the same.
The other seven judges on this court—myself and the six judges who join in this opinion—would hold that the Kansas Constitution does not contain an independent state-law right to abortion. Based on this finding, and because the plaintiffs’ claims are brought solely under the Kansas Constitution, it follows that the plaintiffs have failed to establish a substantial likelihood of prevailing on the merits of their claims. Because we have seven votes in favor of affirming the district court’s order and seven votes in favor of reversing it, the district court’s order granting a temporary injunction is affirmed by an equally divided court. See Fierce v. Fierce, 244 Kan. 246, 247, 767 P.2d 292 (1989) (when an appellate court is equally divided, the judgment of the lower court is affirmed).

The legal battleground over D Ir E abortions

This case is about second-trimester dilation and evacuation (D & E) abortions. To fully understand what is at stake in this lawsuit and the constitutional analysis that follows, it is necessary to summarize various types of abortion procedures. It is also necessary to summarize the current state of federal law relating to D & E abortions.
The most common first-trimester abortion method is vacuum aspiration, otherwise known as suction curettage. In this method, *331 the physician uses a small tube, known as a suction curette, which is attached to a suction apparatus, to empty the uterus. About 90 percent of all abortions performed in the United States take place during the first trimester of pregnancy. Stenberg v. Carhart, 530 U.S. 914, 923, 120 S. Ct. 2597, 147 L. Ed. 2d 743 (2000). The Act does not regulate this procedure.
The most common method of performing a second-trimester abortion is the D & E method. Stenberg, 530 U.S. at 924. In a D & E, a physician uses forceps or a similar instrument to remove the fetus, instead of or in conjunction with a suction curette. Usually, disarticulation of the fetus occurs as the physician brings the fetus through the cervix. Stated differently, “[t]he doctor grips a fetal part with the forceps and pulls it back through the cervix and vagina, continuing to pull even after meeting resistance from the cervix. The friction causes the fetus to tear apart.” Gonzales v. Carhart, 550 U.S. 124, 135, 127 S. Ct. 1610, 167 L. Ed. 2d 480 (2007). “At the conclusion of a D & E abortion no intact fetus remains.... [T]he abortionist is left with ‘a tray full of pieces.’” Stenberg, 530 U.S. at 959 (Kennedy, J., dissenting) (quoting plaintiff-physician’s description of D & E procedure based on record in that case). Although some physicians may induce fetal demise before performing a D & E after 18 weeks gestation, Hodes and Nauser do not take steps to cause fetal demise prior to beginning the D & E procedure.
Another procedure is the “intact D & E” or dilation and extraction (D & X), sometimes called a “partial-birth abortion.” In this procedure, after the cervix is dilated, the fetus is removed from the uterus while still intact. While the fetus is still in the mother’s body, the physician pierces and collapses the fetus’ skull and then removes the fetus. Kansas has a statute banning this procedure. See K.S.A. 2014 Supp. 65-6721.
In Roe v. Wade, 410 U.S. 113, 152-53, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973), the United States Supreme Court recognized for the first time a right to abortion based in the liberty interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Several years later, in Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 877, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992) (plurality opinion), the Court *332 announced an undue-burden standard courts must apply when considering the constitutionality of abortion regulations. An undue-burden finding, as described in Casey, “is a shorthand for the conclusion that a state regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus.” 505 U.S. at 877.
In Stenberg, a physician who performed abortions brought suit on behalf of himself and his patients, challenging the constitutionality of a Nebraska statute banning “partial-birth abortion.” The case worked its way to the United States Supreme Court, which held that: (1) The statute was unconstitutional because it lacked any exception for the preservation of the health of the mother, and (2) the statute was unconstitutional because it applied to the D & E procedure as well as to the D & X procedure, and thus imposed an undue burden on a woman’s ability to choose D & E abortion, thereby unduly burdening the right to choose abortion itself. 530 U.S. at 938, 945-46.
Seven years later, in Gonzales, the United States Supreme Court again considered a statute banning a particular method of abortion. The Court again applied the undue-burden test, but this time it upheld the statute—a federal ban on the D & X procedure. 550 U.S. at 133, 146-47, 150-54. The Court found that the governments legitimate interests in showing “its profound respect for the fife within the woman” and in protecting the integrity and ethics of the medical profession were rationally furthered by a statute banning a procedure that Congress found was similar to infanticide. 550 U.S. at 157-58. The Gonzales Court held that the ban did not have the effect of imposing an undue burden on the right to abortion. Key to this holding was the fact that this statute, unlike the Nebraska statute in Stenberg, clearly banned only the D & X procedure—the D & E procedure remained legal. 550 U.S. at 164.
After Gonzales, it appeared that the United States Supreme Court had drawn a clear fine: The D & X procedure could be banned, but any statute that attempted to ban tire D & E procedure would be unenforceable under the federal Constitution. In 2015, the Kansas Legislature passed the Act which is now before this court. Contrary to Hodes and Nauser’s claim, the Act does *333 NOT ban the D & E procedure. Instead, the Act allows a physician to perform a D & E as long as steps are taken to cause fetal demise before dismemberment. See L. 2015, ch. 22, secs. 2-3. Whether those steps impose an undue burden on a patients right to abortion in Kansas is the focus of the second issue in this case. It appears that the intent of the legislature was that if the D & E must be allowed by law, the only humane method to perform the procedure is to first cause fetal demise. One Kansas senator, joined by 10 others, partially explained his rationale for voting in favor of the Act: “To destroy an unborn child by employing the barbaric and immoral practice of dismemberment is deplorable.” Sen. J. 2015, p. 141.
Because Hodes and Nauser do not induce fetal demise before performing a D & E, they claim the Act bans this portion of their practice. Hodes and Nauser filed a petition in Shawnee County District Court seeking declaratory and injunctive relief from the Act. They asked the district court to declare the Act unconstitutional and to enjoin the State from enforcing the Act. But here is where the case takes a different twist. Hodes and Nauser did not assert a claim under the clearly recognized right to abortion found in the United States Constitution. Instead, they asked the district court to find that the Act unconstitutionally inhibits the right to abortion found in the Kansas Constitution.
Based on sparse evidence presented by the plaintiffs and no evidence presented by the State, the district court granted a tem-poraiy injunction staying the enforcement of the Act until further order of the court or until final judgment is entered in the matter. In doing so, the district court concluded that “Sections 1 and 2 of tire Bill of Rights of the Kansas Constitution independently protects the fundamental right to abortion.” The district court also concluded that the plaintiffs had shown a substantial likelihood of success on the merits of their claim that the Act violates their patients’ right to abortion protected by tire Kansas Constitution. We must address these issues in the same order.

Does the Kansas Constitution provide an independent state-law right to abortionP

When analyzing the constitutionality of a statute, courts adhere to certain general principles. First, we “presume statutes *334 are constitutional and must resolve all doubts in favor of a statute s validity. [Citations omitted.]” Siruta v. Siruta, 301 Kan. 757, 786, 348 P.3d 549 (2015). The party attacking the statute usually bears the burden to demonstrate its unconstitutionality. See Hoesli v. Triplett, Inc., 303 Kan. 358, 369, 361 P.3d 504 (2015) (citing In re Tax Appeal of Weisgerber, 285 Kan. 98, 102, 169 P.3d 321 [2007]).
Here, the district court erred as a matter of law by finding a “fundamental right” to abortion, thereby subjecting the Act to strict scrutiny and stripping away the presumption of constitutionality. As the United States Supreme Court clarified in Casey, abortion regulations are subject to the undue-burden test, which is neither rational-basis review nor strict scrutiny. 505 U.S. at 877. Thus, the Act in question is cloaked with the presumption of constitutionality and the burden is on the plaintiffs to demonstrate otherwise. But before we address the constitutionality of the Act, the threshold question in this appeal is whether the Kansas Constitution recognizes a right to terminate a pregnancy independent of the right grounded in the United States Constitution.
As an initial matter, we address Hodes and Nausers assertion that our Supreme Court “has consistently held that the liberty and due process protections of Sections 1 and 2 encompass the same rights protected under the Fourteenth Amendment of die Federal Constitution. [Citations omitted.]” If our Supreme Court has truly spoken directly to this issue, we must follow its holding. See Snider v. American Family Mut. Ins. Co., 297 Kan. 157, 168, 298 P.3d 1120 (2013) (Court of Appeals is duty bound to follow Kansas Supreme Court precedent, absent some indication it is departing from previous position).
But all of tire cases Hodes and Nauser cite to support their contention are factually and legally distinguishable from the present case. The cases are factually distinguishable because only one of them—Alpha Med. Clinic v. Anderson, 280 Kan. 903, 128 P.3d 364 (2006)—deals with abortion rights. The cases are legally' distinguishable because most of them address equal protection issues, not due process issues. Most of the cases simply assert, without further explanation, that §§ 1 and 2 of the Kansas Constitution Bill of Rights have much the same effect as the Fourteenth Amendment *335 concerning due process and equal protection. See, e.g., State ex rel. Tomasic v. Kansas City, Kansas Port Authority, 230 Kan. 404, 426, 636 P.2d 760 (1981). Some cases that apply the sections in a due process context analyze procedural due process requirements, not substantive due process. See, e.g., Board of Reno County Comm'rs v. Akins, 271 Kan. 192, 197, 21 P.3d 535 (2001). Although some cases analyze substantive due process under § 18 of the Kansas Constitution Bill of Rights, Hodes and Nauser have not asserted § 18 as a basis for an independent right to abortion. See Siruta, 301 Kan. at 774 (recognizing general rule that a party waives an argument by failing to brief it).
Most importantly, in the one case that the Kansas Supreme Court was asked to address the precise constitutional question before this court today, our Supreme Court declined to reach the issue. Both parties acknowledge that our Supreme Court explicitly stated in 2006 that it had “not previously recognized—and need not recognize in this case despite petitioners’ invitation to do so— that [a pregnant womans right to obtain an abortion] also exist[s] under the Kansas Constitution.” See Alpha Med. Clinic, 280 Kan. at 920. Although the court went on to note that it customarily interprets the Kansas Constitution “to echo federal standards,” Alpha is not controlling on the issues before us today. 280 Kan. at 920. Thus, without binding precedent from our Supreme Court, we must proceed to answer the question of whether the Kansas Constitution provides a right to abortion independent of the right found in the United States Constitution.
Our Supreme Court has recognized that the Kansas Constitution and the United States Constitution are distinct documents susceptible to distinct interpretation. See State v. Lawson, 296 Kan. 1084, 1090-93, 297 P.3d 1164 (2013). “In ascertaining the meaning of a constitutional provision, the primaiy duty of the courts is to look to the intention of the makers and adopters of that provision.” State ex rel. Stephan v. Finney, 254 Kan. 632, 654, 867 P.2d 1034 (1994); In re Tax Exemption Application of Kaul, 261 Kan. 755, 765, 933 P.2d 717 (1997). As long ago as 1876 and as recently as 2014, our Supreme Court has recognized the vital importance of determining the intent of the framers of constitutional language when interpreting constitutional provisions:
*336 "“‘[T]he best and only safe rule for ascertaining the intention of the makers of any written law[] is to abide by tire language they have used; and this is especially true of written constitutions, for in preparing such instruments it is but reasonable to presume that every word has been carefully weighed, and that none are inserted, and none omitted without a design for so doing.’”” Gannon v. State, 298 Kan. 1107, 1143, 319 P.3d 1196 (2014) (quoting Wright v. Noell, 16 Kan. 601, 607 [1876]).
We must adhere to this long-standing principle even when interpreting language in the Kansas Constitution which arguably corresponds to a provision in the United States constitution. Although the Kansas Supreme Court traditionally has not interpreted our state constitution differently than the United States Constitution, it has the right to do so. See Lawson, 296 Kan. at 1090-93; State v. Scott, 286 Kan. 54, 93, 183 P.3d 801 (2008) (“‘[W]e have the right to interpret our Kansas Constitution in a manner different than the United States Constitution has been construed.”’)- Crucial to correctly applying this precept is recognizing that coextensive interpretation of provisions of the Kansas and United States Constitutions is appropriate only when the provisions themselves are similar. See State v. Schoonover, 281 Kan. 453, 493, 133 P.3d 48 (2006) (“Generally, provisions of the Kansas' Constitution which are similar to the Constitution of the United States have been applied in a similar manner.” [Emphasis added.]).
For example, tire Fourth Amendment to the United States Constitution provides:
“The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or tilings to be seized.”
Section 15 of the Kansas Constitution Bill of Rights provides:
“The right of the people to be secure in their persons and property against unreasonable searches and seizures, shall be inviolate; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched and tire persons or property to be seized.”
Clearly, tire search and seizure provisions of the Kansas and United States Constitutions are similar. Thus, it is no surprise *337 that our Supreme Court has long held that they provide the same rights and protections. See, e.g., State v. Neighbors, 299 Kan. 234, 239, 328 P.3d 1081 (2014). Our Supreme Court has also held coextensive other similar provisions in the Kansas and United States Constitutions. See, e.g., State v. Hensley, 298 Kan. 422, 435, 313 P.3d 814 (2013) (noting that although the language of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights are not identical, they are similar and have been interpreted as providing the same protection against double jeopardy); Scott, 286 Kan. at 93 (“‘The wording of [the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights] is nearly identical, and we will look to constructions of both provisions in reaching our conclusions herein.’”); State v. Busse, 231 Kan. 108, 110-11, 642 P.2d 972 (1982) (quoting similarly worded provisions of Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights and stating that the rights in each are satisfied by the same opportunity for confrontation).
On the other hand, there are also instances in which the Kansas Constitution has provided rights and protections different from those provided in the United States Constitution. For example, § 6 of the Kansas Constitution Bill of Rights states: “There shall be no slavery in this state; and no involuntary servitude, except for the punishment of crime, whereof the party shall have been duly convicted.” Section 6 was ratified in 1859 and enacted along with the rest of the original Kansas Constitution in 1861. See L. 1861, p. 48; Wyandotte Constitutional Convention, pp. 574-75 (1920). When our state constitution was adopted, slavery was not addressed in the United States Constitution and it was legal in many states. The majority of the framers of the Kansas Constitution abhorred slavery and wanted Kansas to be a free state, so they drafted the constitution to ban slavery in plain and unambiguous terms in order to accomplish their intent.
Moreover, the fact that a prohibition exists in the United States Constitution does not necessarily mean that it also must independently exist somewhere in the Kansas Constitution. The Supremacy Clause of the United States Constitution “invalidates state laws *338 that interfere with, or are contrary to, federal law.” Board of Miami County Comm’rs v. Kanza Rail-Trails Conservancy, Inc., 292 Kan. 285, 294, 255 P.3d 1186 (2011). It does not require that state constitutions must be interpreted as conferring rights identical to the federal Constitution because failing to guarantee a right is not the same as interfering with or running contrary to a federal guarantee of that right. Practically speaking, the absence in a state constitution of a right nonetheless guaranteed by the federal Constitution will have no effect on a party’s ability to seek redress if the right is violated, as any aggrieved party may pursue relief under the United States Constitution.
On the issue of abortion rights, the provision of the federal Constitution implicated is the liberty interest found in the Due Process Clause of the Fourteenth Amendment. See Casey, 505 U.S. at 846; Roe, 410 U.S. at 152-53. Hodes and Nauser assert that §§ 1 and 2 of the Kansas Constitution Bill of Rights provide at least the same right to abortion as is guaranteed by the Fourteenth Amendment to the United States Constitution. Under the analysis courts have traditionally used, if the Fourteenth Amendment is sufficiently similar to §§ 1 and 2 of the Kansas Constitution Bill of Rights, we will accede to the plaintiffs’ request and find the provisions coextensive. In ascertaining the meaning of a constitutional provision, Kansas courts apply a textual and historical approach in order to give effect to the intent of its framers. See State ex rel. Stephan, 254 Kan. at 654.
We first look to the language of the textual provisions. Section 1 of the Fourteenth Amendment states, in pertinent part:
“No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.”
Section 1 of the Kansas Constitution Bill of Rights states: “All men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness.” This language is taken from the Declaration of Independence. Wyandotte Constitutional Convention, pp. 678-79. Initially, by simply examining the plain language of the two provisions, we note that the language of *339 § 1 of the Kansas Constitution Bill of Rights is not the same as the language of the Fourteenth Amendment. Section 1 of the Kansas Constitution Bill of Rights does not mention due process of law— the precise clause in the Fourteenth Amendment that recognizes a right to abortion. Moreover, § 1 does not include language such as “[n]o State shall. . . deprive” any person of rights or privileges without due process of law—language that might trigger substantive rights under the provision. See U.S. Const, amend. XIV, § 1. Arguably, tire Kansas Constitution contains no clearly identified substantive due process clause. At least one Kansas district court has examined § 1 closely and concluded that its framers did'not intend it to “’furnish a basis for the judicial determination of specific controversies.’” State exrel. Kline v. Sebelius, No. 05-C-1050, 2006 WL 237113, *12 (Kan. 3d Jud. Dist. Ct. January 24, 2006) (quoting Schaake v. Dolley, 85 Kan. 598, 601, 118 Pac. 80 [1911]).
Section 2 of the Kansas Constitution Bill of Rights states:
“All political power is inherent in the people, and all free governments are founded on their authority, and are instituted for their equal protection and benefit. No special privileges or immunities shall ever be granted by tire legislature, which may not be altered, revoked or repealed by the same body; and this power shall be exercised by no other tribunal or agency.”
Section 2 focuses on political power and a prohibition against special privileges and immunities. It contains language similar to the Fourteenth Amendment regarding equal protection, and our Supreme Court has long cited and applied § § 1 and 2 in equal protection analysis. See State v. Limon, 280 Kan. 275, 283, 122 P.3d 22 (2005); Tri-State Hotel Co. v. Londerholm, 195 Kan. 748, 759, 408 P.2d 877 (1965); Winters v. Myers, 92 Kan. 414, 421, 140 Pac. 1033 (1914). Like § 1, however, § 2 does not contain any due process protections of the right to liberty similar to the language in the Due Process Clause of the Fourteenth Amendment.
We conclude that the plain language of §§ 1 and 2 of the Kansas Constitution Bill of Rights is not similar enough to the language of the Fourteenth Amendment to find that the corresponding provisions must be applied in the same manner. Stated differently, although Kansas courts generally interpret provisions of our Kansas Constitution the same as the United States Supreme Court’s *340 interpretation of corresponding provisions of the United States Constitution, we remain unconvinced that tire language of § § 1 and 2 of the Kansas Constitution Bill of Rights is sufficiently similar to the language of the Fourteenth Amendment to justify coextensive interpretation.
We next look to the history of § § 1 and 2 of the Kansas Constitution Bill of Rights for additional information on the framers’ intent. The Kansas Constitution was adopted at the Wyandotte Constitutional Convention on July 29, 1859, and was ratified on October 4, 1859, by a vote of 10,421 in favor and 5,530 against. Revisor’s Note to the Constitution of the State of Kansas, p. 13. As the State points out, at the time § § 1 and 2 of the Kansas Constitution Bill of Rights were ratified, abortion was criminalized in Kansas. In fact, the Territorial Legislature had outlawed certain types of abortion even pri- or to Kansas obtaining statehood. See Kan. Terr. Stat. 1855, ch. 48, § § 9-10. The first Kansas Legislature adopted identical provisions, and statutes broadly criminalizing abortion except when required to save the mother’s fife in the face of an emergency existed until 1970. See K.S.A. 21-3407 (Weeks); G.L. 1862, ch. 33, §§ 9-10.
Additionally, the Fourteenth Amendment was proposed in 1866 and ratified in 1868, whereas §§ 1 and 2 of the Kansas Constitution Bill of Rights were ratified in 1859, 7 years before Congressional debates over the Fourteenth Amendment began and 9 years prior to the Fourteenth Amendment’s ratification. See Wildenthal, Nationalizing the Bill of Rights: Revisiting the Original Understanding of the Fourteenth Amendment in 1866-67, 68 Ohio St. L.J. 1509, 1539 (2007) (discussing first proposal of Fourteenth Amendment); Wyandotte Constitutional Convention, pp. 574-75. Clearly, the framers of the Kansas Constitution could not have consciously intended to create rights coextensive with the rights under the then-nonexistent Fourteenth Amendment.
Hodes and Nauser contend that we should interpret §§ 1 and 2 to encompass a right to abortion because § 1 acknowledges the inalienable natural right to liberty. We assume this is because the United States Supreme Court in Roe grounded its recognition of a woman’s right to terminate her pregnancy in “the Fourteenth Amendment’s concept of personal liberty and restrictions upon *341 state action.” 410 U.S. at 153. But to accept such a broad reading of § 1 of the Kansas Constitution Bill of Rights, which does not contain the same language as the Fourteenth Amendment and was ratified under different historical circumstances, would go well beyond the apparent intent of its framers.
The judges on this court who vote to affirm the district court, or at least most of them, conclude that § § 1 and 2 of the Kansas Constitution Bill of Rights provide die same protection for abortion rights as the Due Process Clause of the Fourteenth Amendment. This conclusion is premised on the finding that the language of § § 1 and 2 of the Kansas Constitution Bill of Rights is sufficiently equivalent to the Due Process Clause of the Fourteenth Amendment to justify coextensive interpretation. But this premise is flawed because a comparison of the plain language of the two separate constitutions reveals important differences. Our Kansas Supreme Court decisions that have stated the general proposition that § § 1 and 2 of the Kansas Constitution Bill of Rights have much the same effect as the Fourteenth Amendment concerning due process and equal protection are factually and legally distinguishable from this case and fail to support the ultimate conclusion that the Kansas Constitution recognizes a right to abortion.
Judge Atchesoris concurring opinion agrees with our conclusion that there are important differences between § § 1 and 2 of the Kansas Constitution Bill of Rights and the Fourteenth Amendment to the federal Constitution and that the two instruments should be interpreted differently. But Judge Atcheson goes on to find that § 1 of the Kansas Constitution Bill of Rights provides even greater protection for abortion rights than is provided by the Fourteenth Amendment. We believe that such a broad reading of § 1 of the Kansas Constitution Bill of Rights is not supported either by the plain language of the provision or by the historical circumstances under which it was adopted.
To begin to wrap up, “[i]n ascertaining the meaning of a constitutional provision, the primary duty of the courts is to look to the intention of the makers and adopters of that provision.” State ex rel. Stephan, 254 Kan. at 654. This means that courts must do their best to ascertain the intention of the delegates at the Wyandotte *342 Constitutional Convention who drafted our state constitution and the Kansas territorial voters who ratified the instrument in 1859. That is not always an easy task to accomplish over 150 years after the fact. But the question we need to ask and answer is not what rights todays judges would like to see in our state constitution. The proper question to ask and answer is what rights the makers and adopters of the instrument intended to protect.
Simply put, diere is nothing within the text or history of § § 1 and 2 of the Kansas Constitution Bill of Rights to lead this court to conclude that these provisions were intended to guarantee a right to abortion. Kansas courts are authorized to interpret our state constitution in a manner different than the United States Constitution has been construed, and we should do so when appropriate. Our state’s founders held sacred the basic concepts of life, liberty, and the pursuit of happiness, and they expressed those sentiments in that order in § 1 of our Bill of Rights. Even if Kansas courts were to find substantive due process rights under § 1, as opposed to a mere expression of traditional beliefs, we would not find a substantive due process right to abortion.
The subject of abortion places the pregnant woman’s liberty interest directly at odds with the unborn child’s right to life. The balancing of these interests is a question of public policy. Our state legislature, not an intermediate court of appeals, is the branch of government charged with the development of public policy on behalf of Kansas citizens. Because tire Kansas Constitution provides no substantive due process right to abortion, our legislature is free to restrict abortion procedures to the extent it finds it appropriate—as long as the legislative act does not violate our federal Constitution. This is consistent with the democratic process by which we govern ourselves.
Hodes and Nauser are asking this court to amend the Kansas Constitution to include by inference a right to abortion that is not expressly found in the text of the document. Article 14 of our state constitution provides a process for amendments to be proposed by the legislature and approved by the electors, and our constitution has been amended many times since it was originally adopted. “The Kansas Constitution is the work of the people.” Gannon, 298 *343 Kan. 1107, Syl. ¶ 1. If Kansans want to amend our constitution to include a state-law right to abortion, they may do so properly under Article 14; it should not be done by judicial decree.
As Hodes and Nauser are fully aware, if they desire to seek judicial relief from the Act for themselves and their patients, they are free to invoke the protections of the federal Constitution. The plaintiffs are not without a legal remedy even if Kansas courts deny their request to find a state-law right to abortion. As stated in their brief: “[T]he United States Supreme Court has already balanced the precise issue before this Court, striking down a ban on D & E, the veiy procedure banned by the Act, as unconstitutional.” In addition to the fact that our state constitution does not speak directly to the subject of abortion, another reason Kansas courts should decline the plaintiffs’ request to find a right to abortion in the Kansas Constitution is simply because it is unnecessary for Kansas courts to do so. The citizens of Kansas, including Hodes and Nauser and their patients, are unequivocally protected by the Due Process Clause of the Fourteenth Amendment, as interpreted by the United States Supreme Court. For the sake of consistency alone, we should leave it there rather than entangling our state courts into this arena which has divided our nation for over 40 years.
In closing, tire judges who join in this opinion would hold that the Act is not prohibited by §§ 1 and 2 of the Kansas Constitution Bill of Rights. Because we would hold that § § 1 and 2 of the Kansas Constitution Bill of Rights do not provide an independent state-law right to abortion, we need not reach the question of whether the Act unconstitutionally hinders the exercise of that right.
Green, Hill, Bruns, Powell, Schroeder, and Gardner, JJ., join in the foregoing dissenting opinion.