No. 94,570

JOHN NEAL GILLEY, *et al.*, INDIVIDUALLY AND AS REPRESENTATIVES OF THOSE PERSONS SIMILARLY SITUATED, *Appellants/Cross-appellees*, v. KANSAS GAS SERVICE COMPANY, *et al.*, *Appellees/Cross-appellants*.

(169 P.3d 1064)

Opinion filed October 26, 2007.

*James P. Frickleton*, of Bartimus, Frickleton, Robertson & Gorny, P.C., of Leawood, argued the cause, and *John F. Edgar* and *John M. Edgar*, of The Edgar Law Firm LLC, of Kansas City, Missouri, *Lee Thompson*, of Thompson Law Firm, LLC, of Wichita, and *Rex A. Sharp*, of Gunderson, Sharp & Walke, L.L.P., of Prairie Village, were with him on the briefs for appellants/cross-appellees.

*James T. Ferrini*, of Clausen Miller P.C., of Chicago, Illinois, argued the cause, and *Barbara I. Michaelides*, of the same firm, and *Charles D. Lee*, of Martindell, Swearer & Shaffer, LLP, of Hutchinson, were with him on the brief for appellee/cross-appellants ONEOK, Inc., and Mid Continent Market Center, Inc.

*Daniel D. Crabtree* and *John C. Nettels, Jr.*, of Stinson Morrison Hecker LLP, of Overland Park, were on the brief for appellee/cross-appellant Westar Energy, Inc.

The opinion of the court was delivered by

JOHNSON, J.: A class of business owners (business class) in Reno County, Kansas, sought damages against ONEOK, Inc. (ONEOK), Mid Continent Market Center, Inc. (MCMC), and Western Resources, Inc. (Westar) for profits lost as a consequence of the defendants' negligence which permitted natural gas to escape from the Yaggy Field gas storage facility in the vicinity of Hutchinson, Kansas. The jury found ONEOK and MCMC at fault but deter-

mined that the business class had suffered no damages. The business class appeals the jury's verdict on damages, claiming that the trial court erred in giving a limiting instruction to the jury regarding the testimony of a lay damages witness. Finding no error in the instruction, we affirm.

The business class brief sets forth, in considerable detail, the events leading up to and following the escape of natural gas from defendants' underground storage facility. Much of that recitation is unnecessary for our opinion, and we will refrain from such a chronicle here. See *Hayes Sight & Sound, Inc. v. ONEOK, Inc.*, 281 Kan. 1287, 136 P.3d 428 (2006) (setting forth a detailed factual recitation).

An explosion in downtown Hutchinson on January 17, 2001, and a subsequent explosion the following day in the Big Chief Mobile Home Park, caused property damage and two fatalities, and led to the evacuation of a number of residences and businesses in the vicinity of the explosions. The problem was traced to the escape of natural gas from the Yaggy underground natural gas storage facility located northwest of Hutchinson. The gas migrated underground through a porous geologic formation and rose to the surface in Hutchinson through abandoned brine wells which were not properly plugged. In this lawsuit, the jury found the defendants, ONEOK and MCMC, caused the explosions by being negligent in the ownership, operation, and maintenance of Yaggy facility. Westar, which had been involved in the ownership and control of the Yaggy facility prior to 1997, was found not to be at fault for the natural gas escape.

This lawsuit was filed as a class action, and the district court certified the class, defined as follows:

"All owners of businesses within Reno County as of January 17, 2001, to the present. Excluded from the class are governmental entities, officers, directors, employees, subsidiaries and affiliates of any of the defendants and any judges and justices who preside over this case or any portion thereof."

However, many of the business owners who suffered damages from the incident individually settled or litigated their respective claims and were not part of this class action. See, *e.g.*, *Hayes Sight & Sound, Inc.*, 281 Kan. 1287.

A class of Reno County real property owners was included in the initial petition, and the two class actions were tried together. However, the district court maintained separate case numbers for the two class actions, and we have been presented with separate appeals. See *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 169 P.3d 1052 (2007). This opinion only deals with the business owners' class action.

The business class claimed that the gas incident caused an interruption in business in Reno County and that the class of business owners suffered a loss of revenue due to defendants' negligence. To establish class-wide damages, the business class presented the testimony of John Korschot, an investment banker who specialized in valuing middle market businesses.

Initially, Korschot prepared a report based upon his study of documentation which had been voluntarily provided by business owners. Korschot received information from approximately 50 business owners, but he testified that the information on all but 14 businesses was insufficient for him to calculate the lost revenue resulting from the escaped gas incident. Korschot calculated the total lost sales for those 14 businesses to be $947,499.

Subsequently, Korschot obtained from the State of Kansas a sales tax breakout for the years 2000 and 2001 in the cities of Hutchinson and South Hutchinson. He used that data to compare the total sales for January through August in both years. He selected August as a cut-off date to avoid the adverse impact of the terrorist attack of September 11, 2001. Both the total local sales tax revenues and the total state sales tax revenues were actually higher in the post-incident period of 2001 than for the comparable period in 2000, prior to the explosions. However, Korschot determined that of the approximately 1,706 businesses on the sales tax reports, 826 had experienced decreased sales in the 2001 period. He then calculated the reduction in gross sales for the 826 adversely affected businesses, applied an assumed universal profit percentage to arrive at a lost profits figure, made certain adjustments to that figure, *e.g.* for gross domestic product trend, and arrived at a total lost profit calculation of $7,698,683.

At the consolidated trial, Kent Brown, the chief financial officer for T&E Oil Company (T&E) testified about his company's experiences with the Hutchinson explosions. ONEOK and MCMC objected to Brown's testimony because he was not a class representative or a class member. The defense requested a limiting instruction if the court were going to overrule the objection, and the following exchange occurred:

"MR. CRABTREE [defense counsel for Western Resources]: I join the objection. And if the Court were to overrule it, we would ask for those limiting instructions previously given in the same situation.

"MR. JOHN M. EDGAR [plaintiffs' counsel]: That's the way the Court's handled it in the past."

The previous limiting instructions were given prior to the testimony of real property owners who were testifying about their experiences with respect to the other class action where the claim was for a diminution in property values resulting from marketplace fear or stigma. As here, those real property witnesses were not class representatives. The trial judge had advised the jury that the witnesses would testify about their own respective experience with their own property and such testimony was not to be considered "as either common or typical of Reno County residential landowners."

With respect to the business owners' lay witness, the district court advised the jury:

"THE COURT: Mr. Brown—ladies and gentlemen of the jury, he's not a member of the class, and so his testimony is limited to—just like we did the other witnesses, lay witnesses who testified last week.

"MR. FRICKLETON [plaintiffs' counsel]: Your Honor, he's not a class representative. He is a member of the class.

"THE COURT: He's a member of the class but not a class representative."

Brown testified that T&E was a petroleum marketer and also owned 19 convenience stores in Reno County at the time of the explosions. One of the convenience stores, Pantry Plus No. 6, was near the Big Chief Mobile Home Park, site of the fatal explosion. That particular store was closed for 9 days. After the explosions, the sales at Pantry Plus No. 6 were down, initially by 60-70%, and sales never recovered to the level the store experienced prior to explosions. Brown attributed a 25% reduction in sales to the Yaggy

gas incident, albeit he did not assign a dollar value to that estimate. Approximately 2 years after the explosions, T&E sold all but three of its Reno County stores to the company that operates Kwik Shop convenience stores. Pantry Plus No. 6 was one of the unsold stores, albeit the inventory of Pantry Plus No. 6 was included in the sale to Kwik Shop. In conjunction with the sale, T&E closed the unsold stores, including Pantry Plus No. 6, in February 2003. Thereafter, T&E was unsuccessful in its efforts to sell or lease the real estate where the Pantry Plus No. 6 had been located.

Brown testified that T&E had suffered a loss of $283,656.40, which was Brown's opinion of the value of Pantry Plus No. 6 as a going concern. In other words, Brown was not claiming lost profits but rather was claiming the complete loss of the entire store.

The business class asserts that the trial court erred in giving the limiting *instructions*, although in this appeal only one lay witness testified. In its separate appeal, the real property class raised the issue of the limiting instructions for the lay witnesses in that case and we will not revisit that complaint here. We are concerned only with the instruction in regard to Brown's testimony.

## STANDARD OF REVIEW

The business class intimates that the case is governed by an interpretation of K.S.A. 60-406, which would trigger an unlimited standard of review. See *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 374, 130 P.3d 560 (2006). On the other hand, the business class acknowledges that evidentiary questions involve the exercise of trial court discretion.

What neither party addresses is the apparent lack of an objection by the business class to the giving of a limiting instruction prior to Brown's testimony. The failure to object to a jury instruction invokes a clearly erroneous review standard, whereby we must be able to declare a real possibility existed that the jury would have returned a different verdict if the trial error had not occurred. See *Secretary of Kansas Dept. of Transportation v. Underwood Equipment, Inc.*, 273 Kan. 453, 455-56, 44 P.3d 439 (2002). Nevertheless, we do not perceive that our decision will hinge upon the applicable standard of review.

## *APPLICABILITY OF LIMITING INSTRUCTION*

The business class contends the matter is controlled by K.S.A. 60-406, which provides:

"When relevant evidence is admissible as to one party or for one purpose and is inadmissible as to other parties or for another purpose, the judge upon request shall restrict the evidence to its proper scope and instruct the jury accordingly."

The business class asserts that Brown's testimony was "logically and legally relevant to the damages sustained by T&E Oil Company, a class member, but also was illustrative of the kinds of damages that many class members sustained during and immediately after the explosion." Therefore, the argument continues, the trial court's limiting instruction in this case was improper as a matter of law, because there was no improper use or purpose for which the evidence was proffered. We disagree.

This lawsuit was filed as a class action. As such, the named representatives of the plaintiff class assumed the burden of proving the total, class-wide damages, rather than the individual damages of each member of the class. In apparent recognition of this obligation, the business class offered the testimony of Korschot, who opined on the total gross profit lost by some 826 businesses in the cities of Hutchinson and South Hutchinson.

While Brown's testimony as to the experience of one such business may have been "illustrative," as the business class contends, it cannot form the basis for a calculation of the class-wide damages. In other words, the business class could not ask the jury to take the damages alleged by Brown and multiply that individual loss by the number of class members to arrive at the appropriate amount of judgment to award the class. Thus, Brown's lay witness testimony as to the damages suffered by one putative class member was improper if being offered on the issue of the amount of class-wide damages. Therefore, a limiting instruction to the jury on the proper purpose of Brown's testimony was within the purview of K.S.A. 60-406 and within the trial court's sound discretion.

The business class also suggests that the limiting instruction was not supported by the facts of this case because the "[d]efendants never made a showing that the testimony of Mr. Brown about the

losses to T&E Oil Co. was not common or typical of losses suffered by other business class members." That assertion is contradicted by the plaintiffs' own witnesses.

Korschot testified about the individual losses suffered by the 14 businesses he analyzed to prepare his initial report. The common and typical loss he described was a reduction in gross sales for the first 8 months of 2001, as compared to the same period in the previous year. Likewise, in extrapolating class-wide damages from sales tax data, Korschot was operating upon the premise that the common and typical damage suffered by the business owners was a reduction in sales in the months following the gas explosions, through August 2001.

In contrast, Brown testified that T&E was claiming that it lost the entire market value of Pantry Plus No. 6, because the convenience store had closed. The store closing occurred in February 2003, 2 years after the explosions, and was done in conjunction with T&E's sale of all of its Reno County convenience stores. Brown did not provide a comparison of the 2000 and 2001 sales figures for Pantry Plus No. 6, and, pointedly, he did not offer testimony as to the post-explosion sales experience of T&E's other 18 convenience stores in Reno County. He did, however, confirm that T&E's total sales for fiscal year 2001 were $41 million, up from total sales of $28 million in fiscal year 2000.

T&E's damage claim was fundamentally different from the lost revenues claim of the other class members; Brown admitted as much on cross-examination. The February 2003 closure of Pantry Plus No. 6, as part of a transaction in which T&E got out of the convenience store business in Reno County, was unique and in no way common or typical of any other Reno County business. The limiting instruction was supported by the facts. Moreover, the fact that T&E's experience and claimed loss following the explosions was not common and typical of the other class members would have been patently obvious to the jury, even without a limiting instruction. We find no error in the giving of the limiting instruction.

## PREJUDICIAL EFFECT

The business class argues that the giving of the limiting instruction had a severely prejudicial effect and resulted in a verdict which was inconsistent with that rendered in the real property owners' class action. A review of the testimony transcripts renders those arguments unpersuasive.

The district court certified the class as being "[a]ll owners of businesses within Reno County as of January 17, 2001, to the present" except for governmental entities and businesses with which the principals of the lawsuit were associated. The class certification definition did not restrict class membership to those businesses which had suffered reduced sales, notwithstanding that the plaintiffs' damage expert restricted his testimony to the subset of revenue losing businesses.

Plaintiffs' own evidence established that some Reno County businesses enjoyed an *increase* in sales after the gas explosions, and, at least as reflected in the sales tax data for the cities of Hutchinson and South Hutchinson, the net result for all businesses was an overall *increase* in sales. Indeed, the lay witness, Brown, confirmed that T&E had not suffered a company-wide loss of revenue following the explosions, despite the claimed losses at its one store, Pantry Plus No. 6. Likewise, in testifying about the individual businesses claiming a reduction in revenue, the plaintiffs' damage expert, Korschot, acknowledged that some of those businesses claiming reduced revenues in 2001 had also suffered reduced revenues in the preceding year, *before* the explosions.

Accordingly, the evidence presented to the jury warranted a verdict that, class-wide, business winners equaled or exceeded business losers, such that the business class as a whole had not sustained a net recoverable loss. Thus, if we were to find that the limiting instruction for the lay damage witness was in some manner erroneous, we would declare that it had no reasonable possibility of impacting the jury's verdict.

## CROSS-APPEAL

Prior to being dismissed from the appeal, Westar filed a brief in which it asserted a cross-appeal. ONEOK and MCMC noted in

their brief that they "respectfully adopt here the arguments of Westar Energy, Inc., made in support of its cross-appeal in this case, as well as the arguments to be made by Westar Energy, Inc., in its cross-appellant brief in *Smith v. Kansas Gas Service Company* (No. 05-94602-AS)." We need not consider whether the "adopted cross-appeal" of ONEOK and MCMC survived the dismissal of Westar, as our foregoing decision renders any cross-appeal moot.

Affirmed.