NOT DESIGNATED FOR PUBLICATION

Nos. 120,971
121,718

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DONNA L. HUFFMAN,
*Appellant*,

v.

MEIER'S READY MIX, INC., and
LEO K. MERANDO JR.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Jefferson District Court; JANICE D. RUSSELL and RICHARD M. SMITH, senior judges. Opinion filed January 22, 2021. Affirmed.

*Donna L. Huffman*, of the Law Office of Donna L. Huffman, of Oskaloosa, for appellant.

*Christopher R. Mirakian*, of Foland, Wickens, Roper, Hofer & Crawford, P.C., of Kansas City, Missouri, for appellees.

Before ATCHESON, P.J., SCHROEDER and WARNER, JJ.

WARNER, J.: This personal-injury case arises from a collision where Donna Huffman's vehicle was hit by a Meier's Ready Mix cement truck. A jury found Huffman suffered $809,491 in total damages but also determined that she was 25% at fault for the accident, resulting in a judgment against the defendants in the amount of $607,118.25. Huffman appeals, challenging numerous rulings by the district court leading up to and after the verdict. After reviewing the record and the parties' arguments, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

This case comes to us after a two-week jury trial. But because the record on appeal does not include a transcript of the evidence presented at trial, the following facts are largely taken from the parties' pleadings.

In June 2011, Huffman was travelling eastbound on K-92, headed to work in Oskaloosa. Leo Merando, an employee of Meier's Ready Mix, was driving one of the company's cement trucks behind Huffman. As Huffman slowed to turn left, Merando attempted to pass and collided with the driver's side door of Huffman's vehicle. The impact of the crash caused Huffman's car to spin off the road and into a ditch. Huffman was transported to the hospital via ambulance. Huffman suffered injuries from the crash, including a concussion, loss of memory, headaches, a speech deficiency, and loose teeth.

Huffman, who is an attorney, filed suit on her own behalf against Meier's Ready Mix and Merando. In addition to her own claims based in negligence and various intentional torts, Huffman included loss-of-consortium claims for Craig Reinmuth (who married Huffman three months after the collision) and Lauren Huffman (Huffman's daughter). Huffman's petition claimed $11,000,000 in damages. Huffman retained counsel before the case proceeded to trial.

As the case progressed, the defendants filed motions for partial summary judgment on both loss-of-consortium claims. The defendants argued that claims for loss of consortium were governed by K.S.A. 2019 Supp. 23-2605 and are limited to claims by spouses of the injured person. Thus, the defendants noted, the loss-of-consortium claims asserted on behalf of Reinmuth and Lauren Huffman failed as a matter of law. After a hearing, the district court granted the defendants' motions and entered summary judgment on both consortium claims.

Huffman's remaining claims proceeded to trial. After a two-week trial, the jury found Merando and Meier's Ready Mix to be 75% at fault for the collision and apportioned the remaining 25% of fault to Huffman. The jury found that Huffman had suffered $809,491 in damages and, based on the defendants' comparative fault, returned a verdict in the amount of $607,118.25 against them.

The district court filed a journal entry of judgment memorializing the jury's verdict on December 6, 2018. Huffman's trial attorneys filed an attorney's lien on the judgment for $236,907.68, and the court permitted the attorneys' withdrawal. Huffman resumed representing herself.

On March 5, 2019, the defendants paid the full amount of the judgment then pending—$610,657.88 in principal (including costs) and $9,730.80 in postjudgment interest—to the Clerk of the Jefferson County District Court. The defendants argued that this payment stopped the accrual of further interest on the judgment. Huffman disagreed, arguing that interest should continue to accrue as long as the case was pending. Huffman noted that, under the legal doctrine known as acquiescence, she could not access the payment without waiving her right to further challenge the outcome of the trial, and Huffman believed that the jury's damage award should have been greater—both in its total amount and because she did not believe the jury should have found her at fault.

After considering Huffman's arguments, the district court found that postjudgment interest stopped accruing when the defendants paid the full amount of the judgment against them. At Huffman's request, the court ordered that the judgment be paid to the Union State Bank of Oskaloosa and that the amount of Huffman's attorney fees be held separately until the attorney's lien could be resolved. The court ultimately denied Huffman's other postjudgment requests in an "Omnibus Decision, Journal Entry and Final Order on Post Trial Matters." Huffman now appeals.

DISCUSSION

Though the jury awarded Huffman damages for her injuries in the accident, Huffman asserts that the verdict did not adequately compensate her in several respects. She argues that the district court erred when it granted the defendants judgment on her loss-of-consortium claims and that those claims should have gone to the jury to consider. She claims the court made evidentiary and instructional rulings during the trial that prevented the jury from accurately weighing the evidence and assessing her damages. She also contends that the court erred when it denied her request for further interest on the judgment. Finally, she argues—for the first time on appeal—that she should have been allowed to include her attorney fees in her request for damages at trial.

After carefully considering each of these claims, we find Huffman has not apprised us of error. Thus, we affirm the judgment of the district court.

1. *Loss-of-consortium claims*

K.S.A. 2019 Supp. 23-2605 defines claims for loss of consortium in this state, stating in relevant part:

> "Where, through the wrong of another, a married person shall sustain personal injuries causing the loss or impairment of his or her ability to perform services, the right of action to recover damages for such loss or impairment shall vest solely in such person, and any recovery therefor, so far as it is based upon the loss or impairment of his or her ability to perform services in the household and in the discharge of his or her domestic duties, shall be for the benefit of such person's spouse so far as he or she shall be entitled thereto."

Loss of consortium occurs when "a married person sustains personal injuries causing the loss or impairment of his or her ability to perform [marital] services." *Tice v. Ebeling*, 238 Kan. 704, 710, 715 P.2d 397 (1986). Damages for loss of consortium are

"based on the loss or impairment of [a spouse's] ability to perform services in the household and in the discharge of his or her domestic duties." 238 Kan. at 710. "Domestic duties" include "all the benefits that accrue as the result of the conjugal relation, such as society, comfort, aid, assistance or any other act that tends to make wedded life worthwhile." 238 Kan. at 710.

In her petition, Huffman brought two claims for loss of consortium: one on behalf of Reinmuth, whom she married three months after the accident, and another on behalf of her minor daughter. Before trial, the defendants moved for summary judgment on these claims, as Kansas law only recognizes loss-of-consortium claims for a spouse, not a partner or child. Based on the text of K.S.A. 2019 Supp. 23-2605 and Kansas Supreme Court precedent, the district court agreed and granted the defendants' motions for summary judgment.

Huffman now challenges that ruling in two respects. First, she contends that Kansas should, as a matter of public policy, expand loss of consortium to include minor children whose parent or parents have been injured because those children rely on their parents for support. Second, she claims that the Kansas Legislature's decision to limit loss-of-consortium claims to married people, rather than unmarried partners, violates her equal-protection rights under federal and state law.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits or declarations show that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." K.S.A. 2019 Supp. 60-256(c)(2). To prevail on a motion for summary judgment, a party must show that there is nothing a fact-finder could decide that would change a court's ruling. See *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009). If a party opposing a motion for summary judgment

points to evidence that creates a genuine question for the fact-finder to resolve, summary judgment should be denied. 289 Kan. at 900.

On appeal, we apply the same framework as the district court, and our review is unlimited. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013). And to the extent our analysis requires an examination and interpretation of K.S.A. 23-2605 and the constitutionality of that statute, both are questions of law we review de novo. See *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019); *Solomon v. State*, 303 Kan. 512, 523, 364 P.3d 536 (2015).

1.1. *The district court did not err in dismissing Huffman's consortium claim brought on behalf of her minor child.*

Huffman argues that the district court erred when it granted summary judgment on the loss-of-consortium claim she asserted on behalf of her minor child. She argues that, although K.S.A. 2019 Supp. 23-2605 only recognizes such claims for married persons, we should interpret the policy aims of that statute broadly and recognize claims for other members of a person's immediate family.

We note, at the outset, that the Kansas Supreme Court has long held that "neither Kansas common law nor Kansas statutes" give rise to a loss-of-consortium claim by an injured person's child. *Natalini v. Little*, 278 Kan. 140, 144, 92 P.3d 567 (2004); see *Klaus v. Fox Valley Systems, Inc.*, 259 Kan. 522, 531, 912 P.2d 703 (1996) (answering certified question, holding "Kansas does not recognize that minor children have a cause of action against a tortfeasor for direct negligent injury to their parent, resulting in an indirect injury to them for loss of parental care and society"); *Hoffman v. Dautel*, 189 Kan. 165, Syl. ¶ 1, 368 P.2d 57 (1962) ("A minor child has no cause of action for damages arising out of the disability of its father, caused by negligence of the defendant, with attendant loss of acts of parental guidance, love, society, companionship and other incidences of the parent-child relationship.").

6

Instead, Kansas law limits compensable loss of consortium to those damages suffered by a person's spouse. K.S.A. 2019 Supp. 23-2605. The statute does not articulate a reason for this line, though we note that a parent who is injured may seek both economic and noneconomic damages, including those related to childcare services and other costs associated with raising children. See *Wentling v. Medical Anesthesia Services, P.A.*, 237 Kan. 503, 512-13, 701 P.2d 939 (1985) (economic damages include expenses of caring for child).

Huffman acknowledges this legal reality. But she argues that, as a matter of public policy, claims for loss of consortium under K.S.A. 2019 Supp. 23-2605 should be expanded to include claims for parental consortium—that is, claims for losses suffered by children when their parents have been injured and are unable to perform their parental duties. We are not persuaded by Huffman's argument for two primary reasons.

First, our Kansas Supreme Court has explicitly held that Kansas law does not permit such a claim. *Natalini*, 278 Kan. at 144; *Klaus*, 259 Kan. at 531. Huffman does not address this precedent, nor does she indicate that the Kansas Supreme Court is departing from its holdings. We are duty-bound to follow Kansas Supreme Court precedent unless a party conclusively demonstrates that the court is departing from its previous position. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). Huffman has not made this showing.

Second, even in the absence of this precedent, Huffman is asking this court to expand a statutory cause of action in the face of the plain and unambiguous language set down by the legislature. "[I]t is not this court's role to rewrite statutes but to interpret them." *Natalini*, 278 Kan. at 144. This limited role stems from the separation of legislative and judicial power within our system of government. An appellate court "merely interprets [the statutory] language" the legislature has chosen; we are "not free to

7

speculate and cannot read into the statute language not readily found there." *Steffes v. City of Lawrence*, 284 Kan. 380, Syl. ¶ 2, 160 P.3d 843 (2007).

Similar to the plaintiff in *Natalini*, Huffman does not seek interpretation of K.S.A. 2019 Supp. 23-2605; she "seeks wholesale revision." See 278 Kan. at 144. That responsibility lies with the legislature, not the courts. The district court correctly granted judgment to the defendants on Huffman's loss-of-consortium claim on behalf of her child.

    1.2.    *K.S.A. 2019 Supp. 23-2605 is not unconstitutional because it only permits claims for loss of consortium by married persons.*

Huffman also argues that the district court erred when it held she could not assert a loss-of-consortium claim on behalf of Reinmuth, who was not married to her at the time of the collision. When the parties briefed this matter before the district court, Huffman presented a similar, policy-based argument that she asserted for her child—that it did not make sense for the legislature to limit loss-of-consortium claims only to married persons. On appeal, she takes a different tack—arguing for the first time that the legislature's decision in K.S.A. 2019 Supp. 23-2605 to limit claims for loss of consortium to spouses violates her right to equal protection under the law, guaranteed by the Kansas and United States Constitutions.

Because appellate courts are courts of review, we ordinarily do not consider arguments the district court did not have an opportunity to rule upon. This includes constitutional claims, as such matters often hinge on particular factual findings or, at the very least, benefit from previous consideration. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). But we have recognized an exception to this preservation requirement when the newly asserted theory involves a purely legal question that does not require further factual or legal development. See *State v. Perkins*, 310 Kan. 764, 768, 449 P.3d 756 (2019). We find that Huffman's equal-protection argument falls into this

narrow category of claims and therefore proceed to the merits of her constitutional challenge.

A statute's constitutionality is a question of law subject to unlimited review. When considering a constitutional claim, courts start from a presumption of constitutionality—presuming the legislature acted within its permissible bounds when enacting the challenged law—and resolve all doubts in favor of a statute's validity. *Solomon v. State*, 303 Kan. 512, 523, 364 P.3d 536 (2015); *Tillman v. Goodpasture*, 56 Kan. App. 2d 65, 68, 424 P.3d 540 (2018), *rev. granted* 309 Kan. 1354 (2019). Because a statute comes before this court cloaked under this presumption, in most instances the party challenging the statute bears the burden of proving its invalidity. *State ex rel. Schneider v. Liggett*, 223 Kan. 610, 616, 576 P.2d 221 (1978).

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution states that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Section 1 of the Kansas Constitution Bill of Rights provides: "All men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness." Though these constitutional provisions include different text and were adopted at different times, the Kansas Supreme Court has consistently held that they are coextensive in their protections. *Alpha Medical Clinic v. Anderson*, 280 Kan. 903, 920, 128 P.3d 364 (2006). In fact, our court has noted that the equal-protection right afforded by section 1 is "duplicative of" the federal right, and the test for determining whether a particular statute violates section 1 is "identical" to the federal equal-protection standard. *Leiker v. Employment Security Bd. of Review*, 8 Kan. App. 2d 379, 387, 659 P.2d 236 (1983). Thus, "if a law does not violate the Fourteenth Amendment to the United States Constitution, neither does it violate Section[] 1 . . . of the Bill of Rights of the Kansas Constitution." 8 Kan. App. 2d at 387.

The federal and state Equal Protection Clauses do not prevent States from "'treat[ing] different classes of persons in different ways.'" *Eisenstadt v. Baird*, 405 U.S. 438, 446-47, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972). Instead, they forbid "'different treatment . . . on the basis of criteria wholly unrelated to the objective of that statute.'" 405 U.S. at 447. In other words, "'[a] classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."'" 405 U.S. at 447.

Courts use a three-step process when reviewing an equal-protection claim. First, we consider whether the legislation creates a classification resulting in different treatment of similarly situated individuals. When a statute treats "'arguably indistinguishable'" individuals differently, then we must determine the appropriate level of scrutiny— whether rational-basis review, intermediate scrutiny, or strict scrutiny—to assess the classification by examining the nature of the regulated conduct. And finally, we analyze the statute under the appropriate scrutiny. See *State v. LaPointe*, 309 Kan. 299, 316, 434 P.3d 850 (2019).

We note that Kansas courts have appeared, from time to time, to conflate the first two steps in this analysis, finding different groups are not similarly situated and thus declining to conduct a full equal-protection analysis when the line drawn by the legislature is a reasonable one. See *In re Tax Appeal of Weisgerber*, 285 Kan. 98, 105, 169 P.3d 321 (2007) (concluding KPERS participants and other public employees are not arguably indistinguishable and holding in the alternative that there was a rational basis for the challenged classification). But these are distinct steps in the analytical analysis. The first step does not reach the merits of an equal-protection claim, but rather is a threshold determination as to whether the plaintiff's claim involves the dissimilar treatment of two arguably similar groups of people, and thus the right to equal protection, at all.

Here, Huffman claims that the legislature violated her right to equal protection when it allowed married persons to recover damages for loss of domestic services they suffered while denying that recovery to people who are unmarried but in similar relationships. Huffman has thus made the threshold showing that K.S.A. 2019 Supp. 23-2605 draws a line between groups that are "arguably" similar for purposes of the Equal Protection Clauses. We turn, therefore, to the appropriate level of judicial scrutiny for Huffman's claim.

As Huffman correctly observes, the right to marry is a fundamental right subject to strict scrutiny. See *Obergefell v. Hodges*, 576 U.S. 644, 671-72, 135 S. Ct. 2584, 192 L. Ed. 2d 609 (2015). But Huffman does not argue that Kansas law unfairly prevented her and Reinmuth from getting married before the collision (though we note that Reinmuth was married to someone else at that time).

K.S.A. 2019 Supp. 23-2605 does not *prevent* people from getting married; instead, it states that people who *are* married may recover damages for loss of consortium. The United States Supreme Court has never held that marital status is a classification triggering heightened equal-protection scrutiny. See *Eisenstadt*, 405 U.S. at 446-47. And both the Kansas and United States Supreme Courts have recognized that challenged classifications resulting in economic inequality—like those allowing the recovery of damages to one group of people but not another—are subject to rational-basis review. See *Williamson v. Lee Optical of Oklahoma Inc.,* 348 U.S. 483, 489, 75 S. Ct. 461, 99 L. Ed. 563 (1955); *In re Weisgerber*, 285 Kan. at 104-05; see also *Smith v. Printup*, 254 Kan. 315, 321-22, 866 P.2d 985 (1993) (holding legislature's decision to treat punitive damages different from other tort damages is constitutional).

Thus, we must determine whether a rational basis exists to justify the legislature's line-drawing. To withstand rational-basis review, a challenged statute "'must be

11

reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.'" *Thompson v. KFB Ins. Co.*, 252 Kan. 1010, 1018, 850 P.2d 773 (1993). We will only find a statute unconstitutional if its classification "'rests on grounds wholly irrelevant to the achievement of the State's legitimate objective.'" *In re Weisgerber*, 285 Kan. at 105. And we are "free to consider whether any *potential* legitimate purpose exists to support the legislative classification," regardless of whether "the conceived reason for the challenged distinction actually motivated the legislature." 285 Kan. at 108-09. In other words, a line drawn by the legislature "'will not be set aside if any state of facts reasonably may be conceived to justify it.'" 285 Kan. at 105.

Huffman attempts to cast the distinction between married and unmarried couples living together as merely a matter of choice, in all other respects equivalent. But Kansas and federal laws treat persons who are married differently from unmarried persons in myriad ways. Married persons are legally obligated to financially support one another. Marriage affects a person's rights to own and to sell property, the amount of income tax owed, the need for a will and insurance, and the execution of retirement plans. The legislature could have believed that the economic interdependence between married couples justified a specific claim for a spouse's losses related to the performance of "services in the household and in the discharge of . . . domestic duties." K.S.A. 2019 Supp. 23-2605. Without this legislative directive, it could be very difficult for a jury to practically determine which services for "domestic duties" were compensable and which were not. Regardless of whether the legislature had this particular rationale in mind when crafting Kansas' loss-of-consortium claim, legitimate purposes exist to support the restriction of that claim to married persons.

Huffman argues that the Kansas Supreme Court's recent decision in *Hodes & Nauser, MDs v. Schmidt*, 309 Kan. 610, 673-74, 440 P.3d 461 (2019), changed this analysis. She points out that *Hodes* held the Kansas Constitution provides greater

12

protection for personal autonomy than the substantive due process protections of the Fourteenth Amendment. See 309 Kan. 610, Syl. ¶ 6. And *Hodes* also observed that when a statute implicates fundamental interests, such as the right to individual autonomy discussed there, the presumption of constitutionality does not apply. See 309 Kan. 610, Syl. ¶¶ 20, 21.

These arguments miss the mark, however. Huffman is correct that *Hodes* recognized the possibility that Kansas law may recognize rights that federal law does not or provide different protections for rights in some instances. But the central claims at issue in *Hodes* were not equal-protection challenges, and the *Hodes* court made no indication that it was departing from its longstanding position that a person's right to equal protection is the same under the federal and state constitutions. See 309 Kan. 610, Syl. ¶ 13 (listing three traditional standards of scrutiny). And since *Hodes* has been decided, Kansas courts have continued to apply the traditional equal-protection framework to those claims. See *State v. Little*, 58 Kan. App. 2d 278, 280, 469 P.3d 79 (2020), *rev. denied* 312 Kan. ___ (November 24, 2020).

It is also true that when a person challenges a suspect classification subject to strict scrutiny or a law implicates fundamental rights, the burden shifts to the State to demonstrate the law is constitutional. E.g., *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 660, 124 S. Ct. 2783, 159 L. Ed. 2d 690 (2004) (content-based restrictions of speech are "presumed invalid" and subject to strict scrutiny by courts); *Hodes*, 309 Kan. 610, Syl. ¶ 16 ("Under strict scrutiny, the burden falls on the government to defend challenged legislation."). But before this burden shifts, the party challenging the government action must demonstrate it involves a fundamental right or suspect classification to trigger this more exacting review. As we have discussed, an economic classification based on marital status does not implicate a fundamental right and is subject to rational-basis review, not strict scrutiny.

13

The legislature's decision in K.S.A. 2019 Supp. 23-2605 to limit claims for loss of consortium to married persons does not violate the Equal Protection Clauses of the Kansas or United States Constitutions.

2. *Alleged trial errors*

Huffman also asserts that the district court erred when it took certain actions during the trial. She argues that the court erroneously excluded evidence of a conversation between Huffman and an insurance adjuster for the defendants during the settlement negotiations on her property-damage claim. And she claims the content of the verdict form was faulty in two respects—it lacked a separate line for future noneconomic damages (as opposed to "pain and suffering" generally), and it indicated that future damages were to be reduced to their present economic value.

At the outset, we observe that our ability to thoroughly review these claims is hampered by the absence of various items from the appellate record. The record does not include a transcript of the two-week jury trial, nor does it include the trial exhibits. Appellate courts, as we have noted, are courts of review. Appellate judges are not present at trial and thus rely on the record on appeal to ascertain the evidence considered and the arguments made. Thus, "[w]hen facts are necessary to an argument, the record must supply those facts and a party relying on those facts must provide an appellate court with a specific citation to the point in the record where the fact can be verified." *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013). The party challenging the outcome of the trial must therefore ensure that we have an appropriate appellate record so we may evaluate his or her claims. See *Friedman*, 296 Kan. at 644-45; *Southwestern. Bell Telephone Co.. v. Beachner Constr. Co.*, 289 Kan. 1262, 1275, 221 P.3d 588 (2009).

14

As our discussion demonstrates, the absence of a trial record makes it difficult to evaluate Huffman's allegations of error during the jury trial. We find—based on the record before us—that Huffman has not demonstrated that the court's rulings were outside the range of decisions permitted by Kansas law.

2.1.   *The district court did not err in ruling a statement made by the defendants' insurer during settlement negotiations was inadmissible.*

Huffman first argues that the district court erred when it granted the defendants' motion in limine to exclude an email from an insurance claims adjuster during settlement negotiations on Huffman's property-damage claim. Huffman sought to admit this statement as evidence that the defendants had admitted fault, leaving the amount of Huffman's damages as the only remaining question to be determined at trial. Huffman also argues that the district court abused its discretion by not permitting her to offer the email as rebuttal evidence at trial to demonstrate the defendants' acceptance of liability.

Shortly before the trial, the defendants filed a motion in limine seeking to exclude "Evidence of Offers of Settlement" and "Mentions of Insurance." Huffman took issue with this request because she wished to introduce an email from an insurance adjuster working for the defendants' insurance company as evidence the defendants were not contesting liability. In the email, which was sent during the adjuster's settlement negotiations on Huffman's property-damage claim for her car, the adjuster stated: "I generally don't send out a letter of acceptance on liability. Generally, it is done verbally as was done in this case when we spoke on the phone." Huffman argued that the email acted as a binding admission of liability for *all* her claims because the adjuster was an agent of the defendant.

The district court found this email was inadmissible for multiple reasons, including that it involved an insurance adjuster and was conducted during settlement negotiations. And the court found that the affidavit Huffman provided to give context to

15

the email's statements only exacerbated these issues. On the whole, the court found that the probative value of the email was substantially outweighed by its potential for undue prejudice. The court noted, however, that its pretrial ruling was conditional on the parties' arguments at that time, and that ruling could be revisited if Huffman were to make an evidentiary showing during trial.

A district court's decision on a motion in limine involves a two-step process. First, the court must determine whether the evidence in question will be inadmissible at trial. Second, the district court must decide if a pretrial ruling, as opposed to a ruling during trial, is justified. A pretrial ruling may be justified if the mention of the evidence during trial would cause unfair prejudice, confusion of the issues, or could mislead the jury; if consideration of the issue at trial might unduly interrupt and delay the trial; or if a pretrial ruling would limit issues and save the parties' time, effort, and cost in trial preparation. *Schlaikjer v. Kaplan*, 296 Kan. 456, 467, 293 P.3d 155 (2013).

Once a district court grants a motion in limine to exclude evidence, the party limited by the motion must make a sufficient proffer of the excluded evidence at trial to preserve the issue for appeal. See *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 278-79, 225 P.3d 707 (2010); *State v. Evans*, 275 Kan. 95, 99, 62 P.3d 220 (2003). A proffer both "preserves the issue for appeal" and "provides the appellate court an adequate record to review when determining whether the trial court erred in excluding the evidence." *National Bank of Andover*, 290 Kan. at 274-75. "Without a proffer, the issue is not preserved for appeal." *Evergreen Recycle v. Indiana Lumbermens Mut. Ins. Co.*, 51 Kan. App. 2d 459, 510, 350 P.3d 1091 (2015); see K.S.A. 60-405; *City of Olathe v. Stott*, 253 Kan. 687, 702, 861 P.2d 1287 (1993) ("Generally, this court will not reverse a judgment because of the erroneous exclusion of evidence unless a party proffers the evidence.").

Because trial transcripts have not been included in the record on appeal, this court cannot be certain if Huffman made an evidentiary proffer at trial, or if any sidebar conferences or in-court discussions were had regarding the claims adjuster's email. The defendants state that Huffman did re-raise the issue regarding the insurance adjuster's statement at trial and offered the same affidavit she had been presented at the limine hearing. But without a transcript, we cannot review and evaluate that evidence. See *Evans*, 275 Kan. at 100. Nor can we evaluate what effect that email may have had if introduced, as we have no way to analyze the strength of the other evidence presented at the trial. See K.S.A. 2019 Supp. 60-261.

More importantly, however, we do not find the district court abused its discretion when it excluded the adjuster's email. Evidence of a party's offer to settle a claim and any settlement negotiations are inadmissible to prove liability. K.S.A. 60-452. And courts must exercise caution in allowing evidence that a party is insured, given the potential such evidence may influence a jury's verdict. See K.S.A. 60-454. Moreover, the email does not actually state that the defendants acknowledged complete liability for the collision; Huffman rather appears to rely on that correspondence to allow her to discuss other oral conversations during her other settlement negotiations with the adjuster. Because of the email's limited probative value and its potential to confuse the issues at trial, the district court did not abuse its discretion when it found the email was inadmissible and granted the defendants' motion in limine.

2.2. *Huffman has not shown error in failing to include a separate category for future pain and suffering damages on the verdict form.*

Huffman also argues the district court erred by not including a separate category of damages for future pain and suffering on the verdict form, but instead included only a general line for noneconomic damages.

17

Kansas courts traditionally review challenges to verdict forms under the same standards used to analyze jury instructions. *Unruh v. Purina Mills, LLC*, 289 Kan. 1185, 1197-98, 221 P.3d 1130 (2009). In reviewing jury instructions, this court engages in a three-step process: (1) determining whether there is appellate jurisdiction and whether the issue has been preserved for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal. *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018). Whether a party has preserved a jury instruction issue affects this court's inquiry at the third step: When a party fails to object to a jury instruction or verdict form, this court applies a "'clearly erroneous review standard, whereby [the court] must be able to declare a real possibility existed that the jury would have returned a different verdict if the trial error had not occurred.'" *Unruh*, 289 Kan. at 1197 (quoting *Gilley v. Kansas Gas Service Co.*, 285 Kan. 24, 28, 169 P.3d 1064 [2007]); see K.S.A. 2019 Supp. 60-251(d)(2). "The party claiming error has the burden to prove the degree of prejudice necessary for reversal." *In re Care & Treatment of Thomas*, 301 Kan. 841, 846, 348 P.3d 576 (2015).

A party preserves an instruction error claim for appeal by timely objecting at trial and by stating the grounds for the objection. See K.S.A. 2019 Supp. 60-251(c)(1), (c)(2)(A), and (d)(1)(A)-(B). Due to the lack of a record, this court has no way of knowing if Huffman timely objected to the verdict form. And the lack of a trial transcript leaves this court unable to determine whether the jury might have returned a different verdict if the verdict form had included a separate category of damages for future pain and suffering.

As an aside, we note that the verdict form's failure to distinguish Huffman's past and future noneconomic damages is not without benefit to Huffman. If the jury had found substantial future noneconomic damages, those damages would have been reduced to their present value—a practice required by Kansas law but challenged by Huffman in this

appeal (as we discuss below). Because the jury did not specifically award future pain and suffering, this reduction did not occur.

The burden is on the party making a claim on appeal—here, Huffman—to show facts in the record that support the claim; without such a record, the claim of error necessarily fails. See *Friedman*, 296 Kan. at 644-45. Huffman has not demonstrated the district court erred, and she certainly has not shown the district court committed clear error, when it did not include a separate line on the verdict form for future noneconomic damages in this case.

2.3. *There was no error in reducing the award for Huffman's future damages to its present value.*

Huffman next contends the district court erred because the verdict form instructed the jury to reduce any award of future medical expenses or future economic loss to their present value. She points out that the verdict form did not include a formula explaining to the jurors how to calculate this reduction. In fact, she appears to take issue with any reduction at all, arguing a reduction in future damages is a "mandate [for] a litigant to gamble their money at an annuity rate."

Kansas law has long recognized that defendants are entitled to have any future damages reduced to their present value, provided they give the court or the jury the appropriate tools to make that determination. See *Laterra v. Treaster*, 17 Kan. App. 2d 714, 727-28, 844 P.2d 724 (1992); see also PIK Civ. 4th 171.02 (2016 Supp.) (including explanations that all future damages be "reduced to present value"); PIK Civ. 4th 181.04 (2016 Supp.) (verdict form for comparative fault, requiring all future damages be "reduced to present value"). These principles were reflected in the jury instructions the district court provided in this case.

19

It appears, from Huffman's brief, that the parties presented exhibits at trial to develop the present value of Huffman's future losses, as well as witness testimony. But these exhibits are not part of the record on appeal, and as we have discussed, we do not have a trial transcript to review. Moreover, to the extent Huffman is claiming error in the manner the jury was instructed, an issue raised for the first time on appeal, any analysis under the clearly erroneous standard would require a review of the record as a whole, including the other instructions, counsel's arguments, and all the evidence presented. See *In re Thomas*, 301 Kan. at 849. This is an analysis we cannot undertake on the record before us.

Huffman provides no legal authority for how we may evaluate her arguments without this crucial information. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) (failure to adequately support claim may result in appellate court declining review). And though she did include an appendix to her brief titled "Compound Interest Calculator," this document is not part of the record on appeal. See *Hajda v. University of Kansas Hosp. Authority*, 51 Kan. App. 2d 761, 769, 356 P.3d 1 (2015) ("Including documents in the appendix of a brief does not make those documents part of the record that may be considered for appellate review."). We find that Huffman has not demonstrated error in the jury's award of future damages.

3. *Prejudgment and postjudgment interest*

We turn now from Huffman's trial claims to her challenges to the district court's rulings after it entered judgment in her favor. Huffman argues the district court erred when it denied her requests for prejudgment interest, as well as postjudgment interest after the defendants had paid the full amount of the judgment to the court clerk. Huffman asserts that, as a matter of equity, she should have been awarded prejudgment interest (since, as we have noted previously, her damages for future losses were reduced to their present value). She also argues that because she cannot access the funds paid into court

without acquiescing to the judgment—and thus forfeiting her right to appeal—it is only fair that the judgment continue to accrue interest at the statutory postjudgment rate.

In Kansas, prejudgment interest—that is, interest on losses before judgment is entered in a plaintiff's favor—is governed by K.S.A. 16-201. *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 925, 157 P.3d 1109 (2007). Under this statute, "[c]reditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate is agreed upon, for any money after it becomes due." K.S.A. 16-201. Appellate courts only overturn the grant or denial of prejudgment interest when a district court abused its discretion in applying this statute. 283 Kan. at 925.

Prejudgment interest is appropriate under K.S.A. 16-201 for "liquidated claims." 283 Kan. at 925. "A claim becomes liquidated when both the amount due and the date on which such amount is due are fixed and certain" or when this amount "become[s] definitely ascertainable by mathematical calculation." 283 Kan. at 925. Conversely, interest is *not* recoverable on claims that are "not ascertainable by computation" or "based on some fixed standard of measurement." *Foster v. City of Augusta*, 174 Kan. 324, 332, 256 P.2d 121 (1953).

In most tort cases, a plaintiff's damages are neither fixed nor certain, but rather are disputed and must be determined by the fact-finder. See *Safety Technologies, L.C. v. Biotronix 2000, Inc.*, 136 F. Supp. 2d 1169, 1175 (D. Kan. 2001); see also *Foster*, 174 Kan. at 332 (prejudgment interest is not available when plaintiff's claims are "in tort, unliquidated, and not ascertainable by computation until the date the court entered its judgment"). That was certainly the case here. Huffman asserted that she suffered $11 million in damages. The defendants disputed that amount, as well as the extent of their liability. And the jury ultimately returned a verdict against the defendants for $607,118.25. It was not until this verdict was journalized—on December 6, 2018—that Huffman's damages were determined and became payable.

21

Huffman's attempt to contrast prejudgment interest to the reduction of her future damages to their present value is misplaced. Under Kansas law, defendants are entitled to have any future damages reduced to their present value when they have made the proper showing. See *Laterra*, 17 Kan. App. 2d at 727-28. Prejudgment interest is interest that has already accrued on a known amount that has already become due. See K.S.A. 16-201. Both types of interest exist to ensure plaintiffs are compensated for the damages they incur as those damages arise and are known. One principle does not displace the other. The district court correctly found that Huffman's tort damages had not accrued prejudgment interest.

Huffman also argues that the district court erred when it found that postjudgment interest stopped accruing when the defendants paid the entire judgment against them. As background, the district court filed the journal entry of judgment against the defendants on December 6, 2018. On March 5, 2019, the defendants paid the entire amount of the judgment plus Huffman's costs ($610,657.88) and postjudgment interest to date ($9,730.80) to the district court. Huffman objected, claiming this payment could not satisfy the judgment because the funds were paid into court rather than to her personally. After a hearing, the court found that the judgment against the defendants was fully satisfied when they deposited the funds into court, and thus postjudgment interest was no longer accruing. At Huffman's request, the court ordered the entirety of the judgment, minus the amount due Huffman's attorneys, to be paid into an account at the Union State Bank of Oskaloosa to be held during the pendency of the appeal.

Postjudgment interest accrues automatically from the date a district court enters a judgment for damages in a party's favor. See K.S.A. 16-204(d); *Bluestem Telephone Co. v. Kansas Corporation Comm'n*, 38 Kan. App. 2d 1092, 1096-97, 176 P.3d 231, *rev. denied* 286 Kan. 1176 (2008). That said, postjudgment interest is "'not a measure of damages, but a compensation fixed by law.'" *McGuire v. Sifers*, 235 Kan. 368, 383-84,

22

681 P.2d 1025 (1984) (quoting 47 C.J.S., Interest & Usury § 23, p. 69). It is a procedural mechanism "'designed to compensate "a successful plaintiff for the time between his entitlement to damages and the actual payment of those damages by the defendant."'" *ARY Jewelers, L.L.C. v. Krigel*, 277 Kan. 464, 479, 85 P.3d 1151 (2004).

For this reason, postjudgment interest stops accruing when a defendant pays the full amount of the judgment—either to the plaintiff or into court. See *Schaefer & Associates v. Schirmer*, 3 Kan. App. 2d 114, Syl. ¶ 8, 590 P.2d 1087 (1979) ("If the judgment debtor wishes to avoid the accrual of interest on appeal, he must tender the amount of the judgment or pay the amount into court."); see also *Bartlett v. Heersche*, 209 Kan. 369, 374, 496 P.2d 1314 (1972) ("Once a judgment debtor pays the full amount of money payable on a judgment into court, interest is not recoverable on the monies deposited in court."). Under this precedent, the district court correctly ruled that the defendants' payment of the full judgment to the district court clerk in March 2019 stopped further interest from accruing.

Huffman acknowledges this caselaw. But she argues that it is not fair that postjudgment interest stopped accruing in March 2019 because she cannot access those funds without acquiescing to the judgment and forfeiting her right to appeal. In essence, Huffman asserts that because the legal doctrine of acquiescence prevents her from accessing the judgment funds while her appeal is pending, the defendants did not actually pay the judgment "unconditionally." See *McGuire*, 235 Kan. at 383 (noting a tender, which stops the accrual of postjudgment interest, must be "'absolute and unconditional to be effectual'"). We disagree.

An "unconditional tender" occurs when a defendant pays a judgment in full and thus ceases to exert dominion over the funds. *Shutts v. Phillips Petroleum Co.*, 240 Kan. 764, 775, 732 P.2d 1286 (1987). Here, the defendants paid the full amount of the judgment, including costs and interest to date, into the district court in March 2019. The

"condition" Huffman complains of is not a contingency imposed by the defendants, but a principle imposed by Kansas law to prevent a person from accepting the benefits of a judgment while at the same time seeking to undermine its foundation.

Under the legal rule of acquiescence, a party who voluntarily accepts the benefit or burden of a judgment loses his or her right to appeal it. *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1271, 136 P.3d 457 (2006); see *Hemphill v. Ford Motor Co.*, 41 Kan. App. 2d 726, 728, 733, 206 P.3d 1 (2009). It is true, as Huffman acknowledges, that barring exceptional circumstances she may not accept payment of the judgment while still hoping to obtain "greater damages on the same claims" on appeal. 41 Kan. App. 2d at 728-29. But this principle applies equally to plaintiffs and defendants. Defendants who have paid the judgment against them cannot ordinarily challenge that judgment on appeal. See *Vanover v. Vanover*, 26 Kan. App. 2d 186, 188, 987 P.2d 1105 (1999). Indeed, the defendants here have not done so.

The legal consequences of acquiescence do not alter the undisputed fact that the defendants paid the full amount of the judgment to the district court clerk in March 2019. Huffman will receive those funds when this appeal—which she has chosen to pursue— has concluded. The district court correctly ruled that postjudgment interest stopped accruing when the defendants unconditionally paid the full amount of the judgment against them.

4. *Attorney fees*

In her final argument on appeal, Huffman asserts that she should have been allowed to submit her attorney fees as an element of damages to the jury. She asserts that the general principle followed by Kansas law—that each person is responsible to pay his or her own attorney fees—deprives injured people of complete compensation for the damages they have suffered. Huffman claims that this approach to attorney fees,

24

commonly called the American Rule, invades the province of the jury and thus violates section 5 of the Kansas Constitution Bill of Rights.

While section 5 of the Kansas Constitution Bill of Rights provides that "[t]he right of trial by jury shall be inviolate," that right is not absolute. Section 5 only preserves the common-law right to a jury trial as it existed at the time of its adoption. *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1133-34, 442 P.3d 509 (2019). And this court has previously found that there is "no authority to suggest that there was a common law right to recover attorney fees and expenses when the Kansas Constitution was adopted—much less that a jury must make a determination regarding when attorney fees should be awarded." *Harder v. Foster*, 58 Kan. App. 2d 201, 207, 464 P.3d 382 (2020); see *Wolf v. Mutual Benefit Health & Accident Association*, 188 Kan. 694, 700, 366 P.2d 219 (1961). Rather, Kansas courts are "prohibited from awarding attorney fees and expenses unless specifically authorized by statute or contract." *Harder*, 58 Kan. App. 2d at 206 (citing *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 [2013]); see also Kansas Supreme Court Rule 7.07(b) (2020 Kan. S. Ct. R. 50) (appellate court may only award attorney fees when district court had the power to do so).

Huffman does not explain how her claim can prevail despite this daunting precedent. But we decline to consider her argument in detail for another reason. As we have previously explained, claims cannot generally be raised for the first time on appeal. *Godfrey*, 301 Kan. at 1043; Supreme Court Rule 6.02(a)(5) (2020 Kan. S. Ct. R. 34). It does not appear from the appellate record that Huffman raised her constitutional argument regarding attorney fees before the district court. Nor does it appear that she requested a separate item of damages based on her attorney fees. And she has not demonstrated, either to the district court or on appeal, any statutory or contractual basis for her attorney-fee request. We find that this issue is not properly before us. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018).

25

It appears Huffman's attorney-fee argument is an effort to challenge the $236,907.68 from the judgment the district court set aside to pay the lien asserted by Huffman's trial attorneys. Huffman asserts that the jury found she suffered "nearly $900,000 in [gross] damages," and yet her net recovery after accounting for her 25% comparative fault and her attorney fees will be "under $400,000." But the reasonableness of the amount Huffman agreed to pay her trial attorneys, which was calculated based on a percentage of her substantial damage award, is not before us.

We acknowledge that Huffman suffered serious injuries as a result of the collision—injuries the jury compensated through its $607,118.25 award in her favor, after taking into account the fault of all parties. We can understand Huffman's efforts to maximize compensation for her losses. But Huffman has not apprised us of any error by the district court. The court's judgment and related postjudgment rulings are affirmed.

Affirmed.

* * *

ATCHESON, J., concurring:  I generally join in the majority opinion except for section 1.2 dealing with Plaintiff Donna L. Huffman's equal protection challenge to the Kansas statute governing claims for loss of consortium. See K.S.A. 2019 Supp. 23-2605. I would frame and analyze the equal protection challenges under both the Kansas Constitution and the Fourteenth Amendment to the United States Constitution somewhat differently. Nonetheless, I agree with the result—Huffman has failed to show she has been denied equal protection because the statute covers spouses but not unmarried partners.