No. 96,550

IN THE MATTER OF THE APPEAL OF WEISGERBER, JAMES P., FROM AN ORDER OF THE DIVISION OF TAXATION ON ASSESSMENT OF INCOME TAX.

(169 P.3d 321)

Opinion filed October 26, 2007.

*Mark A. Burghart*, of Alderson, Alderson, Weiler, Conklin, Burghart & Crow, L.L.C., of Topeka, argued the cause and was on the briefs for appellant James P. Weisgerber.

*James Bartle*, general counsel, of Legal Services Bureau, Kansas Department of Revenue, argued the cause, and *Michael D. Burrichter*, of the same office, was with him on the brief for appellee Kansas Department of Revenue.

The opinion of the court was delivered by

GREENE, J.: James P. Weisgerber appeals a decision of the State Board of Tax Appeals (BOTA) upholding an assessment by the Kansas Department of Revenue, Division of Taxation (KDOR) of additional individual income tax, penalties and interest to Weisgerber for tax years 1999, 2000, and 2001, in the total amount of $577, based upon his failure to add back to his adjusted gross income all contributions to the Kansas Public Employees Retirement System (KPERS) that were picked up by his employer. His appeal frames for our consideration a contention that was not within the authorized purview of BOTA—whether K.S.A. 79-32,117(b)(vi), which requires that certain employee contributions to KPERS be added back to adjusted gross income for purposes of Kansas income taxation, is facially unconstitutional. Weisgerber argues this statute violates the Equal Protection Clauses of the United States and Kansas Constitutions because certain other public employees are not subject to Kansas income tax on contributions to their retirement plans. We conclude that the statute is constitutional and affirm BOTA's decision upholding the assessment.

## *Factual and Procedural Background*

The essential facts are not in dispute. The parties filed a joint stipulation before BOTA, and Weisgerber endorsed this stipulation in his live testimony. Although that testimony was apparently intended to explain or elaborate on his constitutional challenge, the parties cite exclusively to the joint stipulation regarding the necessary factual predicate for this appeal. The stipulation includes the following material facts:

"1. The tax periods at issue in this appeal are calendar years 1999, 2000 and 2001.

"2. Taxpayer is a Kansas resident . . . .

"3. Beginning in 1978, Taxpayer was employed by the League of Kansas Municipalities, which participates in the Kansas Public Employees Retirement System ('KPERS'). Taxpayer was employed by the League of Kansas Municipalities until beginning his employment with the Kansas Department of Revenue on January 2, 1980. Taxpayer has been continually employed by the Kansas Department of Revenue since January 2, 1980.

"4. As an employee of the Kansas Department of Revenue, Taxpayer has been and continues to be a participating member of KPERS.

"5. Taxpayer purchased his first year of KPERS coverage during the course of his years of employment.

"6. K.S.A. 79-32,117(b)(vi), as amended, provides that amounts designated as employee contributions picked up by an employer pursuant to K.S.A. 12-5005, 20-2603, 74-4919 and 74-4965 shall be added to federal adjusted gross income in determining an individual's Kansas adjusted gross income.

"7. As a KPERS member, Taxpayer was required by K.S.A. 79-32,117(b)(vi), as amended, to include his KPERS contributions in determining Kansas adjusted gross income. Additionally, Taxpayer's spouse, Sonja Weisgerber, was also a KPERS member during the years at issue in this appeal and was likewise required to include her KPERS contributions in determining Kansas adjusted gross income.

"8. Believing that the add-back of designated employee contributions picked up by an employer as required by K.S.A. 79-32,117(b)(vi), as amended, is unconstitutional under the Equal Protection Clause of the United States and Kansas Constitutions, Taxpayer did not add-back such KPERS contributions on the joint Kansas Individual Income Tax returns filed for years 1999, 2000 and 2001.

"9. On April 15, 2003, the Department issued to Taxpayer a Notice of Final Assessment of Additional Individual Income Tax ('assessment') for years 1999, 2000 and 2001, consisting of tax, penalty and interest in the total amount of $577.00. . . . The Department's assessment was issued based on Taxpayer's failure to include KPERS contributions in Kansas adjusted gross income on the joint income tax returns filed for such years.

"10. Taxpayer remitted to the Department payment under protest of the assessed tax and interest in the total amount of $476.00 and timely filed a Request for Informal Conference with the Secretary of Revenue ('Secretary') pursuant to K.S.A. 79-3226, as amended. . . .

"11. On October 20, 2003, the Secretary issued her Written Final Determination denying Taxpayer's request for a refund of the amounts paid under protest and upholding the Department's assessment, which was based on the add-back of KPERS contributions to Kansas adjusted gross income pursuant to K.S.A. 79-32,117(b)(vi), as amended. . . .

"12. On November 18, 2003, Taxpayer appealed the Secretary's Written Final Determination to the Board of Tax Appeals.

"13. The sole issue raised by Taxpayer in this appeal is whether the add-back of designated employee contributions picked-up [sic] by an employer pursuant to K.S.A. 12-5005, 20-2603, 74-4919 and 74-4965 as required by K.S.A. 79-32,117(b)(vi), as amended, is unconstitutional under the Equal Protection Clause of the United States and Kansas Constitutions."

Following an evidentiary hearing, BOTA issued an order on March 8, 2006, upholding the assessment and denying Weisgerber's request for relief. Notably, BOTA concluded that it did not have jurisdiction to determine the constitutionality of K.S.A. 79-32,117(b)(vi) and upheld the assessment against the taxpayer.

BOTA subsequently denied Weisgerber's petition for reconsideration.

## Standard of Review

BOTA correctly refrained from considering or deciding Weisgerber's challenge to the constitutionality of the statute, acknowledging that administrative agencies may not rule on constitutional questions. See *Zarda v. State*, 250 Kan. 364, 368, 826 P.2d 1365, *cert. denied* 504 U.S. 973 (1992). Although Weisgerber appealed to the Court of Appeals pursuant to K.S.A. 77-601 *et seq.* and K.S.A. 74-2426(c)(3), the appeal was transferred to this court on our own motion pursuant to K.S.A. 20-3018(c). We therefore consider the constitutional question in the first instance.

We must grant relief "only if . . . [t]he agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied." K.S.A. 77-621(c)(1). The burden is on the party challenging constitutionality. *Blue v. McBride*, 252 Kan. 894, Syl. ¶ 1, 850 P.2d 852 (1993). When a party has asserted a facial challenge to the constitutionality of a statute, the question is not whether that statute is authorized by the constitution, but whether it is prohibited thereby. *State ex rel. Tomasic v. Unified Gov't of Wyandotte County/Kansas City*, 265 Kan. 779, 787, 962 P.2d 543 (1998).

Kansas statutes are presumed constitutional, and all doubts must be resolved in favor of their validity. "If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. A statute must clearly violate the constitution before it may be struck down. [Citation omitted.]" *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 243, 834 P.2d 368 (1992). This court "not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional if the same can be done within the apparent intent of the legislature in passing the statute." *State v. Durrant*, 244 Kan. 522, 534, 769 P.2d 1174, *cert. denied* 492 U.S. 923 (1989).

## The Statute Subject to Challenge

Weisgerber argues that the add-back provision of K.S.A. 79-

32,117(b)(vi) violates the Equal Protection Clauses of the United States and Kansas Constitutions. K.S.A. 79-32,117 generally itemizes the amounts to be included in an individual's adjusted gross income for purposes of Kansas income taxation. It provides in material part:

"(a) The Kansas adjusted gross income of an individual means such individual's federal adjusted gross income for the taxable year, with the modifications specified in this section.

"(b) There shall be added to federal adjusted gross income:

. . . .

(vi) Any amount of designated employee contributions picked up by an employer pursuant to K.S.A. 12-5005, 20-2603, 74-4919 and 74-4965, and amendments to such sections." K.S.A. 79-32,117(a), (b)(vi).

In its inclusion of such contributions pursuant to K.S.A. 74-4919, the add-back statute applies generally to all KPERS participants, and its inclusion of K.S.A. 12-5005, K.S.A. 20-2603, and K.S.A. 74-4965 specifically requires an add back by participants in certain local police and firemen pension plans, judges, and participants in the Kansas Police and Firemen's Retirement System. Weisgerber correctly asserts that there are other public employees who are not subject to the add-back statute, specifically employees of the Kansas City, Kansas Board of Public Utilities (K.S.A. 13-1246a), the Kansas Board of Regents (K.S.A. 74-4925), and employees of certain cities of the first class (K.S.A. 13-14,103), none of whom are participants in KPERS.

Weisgerber argues that in requiring an add back to adjusted gross income for KPERS participants, while excluding any such add back for similar contributions to tax deferred plans for other public employees, the statute has impermissibly discriminated against KPERS participants in violation of the Equal Protection Clauses of the state and federal Constitutions.

### *Equal Protection Guarantees of the State and Federal Constitutions*

The Equal Protection Clause of the United States Constitution is found in the Fourteenth Amendment, which provides:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

This principle of equal protection is also embodied in the Kansas Constitution Bill of Rights, § 1, which states that "[a]ll men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness." See *Peden v. Kansas Dept. of Revenue*, 261 Kan. 239, 251, 930 P.2d 1 (1996), *cert. denied* 520 U.S. 1229 (1997).

Guarantees of the Equal Protection Clauses are implicated when a statute treats arguably indistinguishable classes of people differently. *Smith v. Printup*, 254 Kan. 315, 321, 866 P.2d 985 (1993). A taxpayer seeking to establish an equal protection violation must demonstrate that his or her treatment is the result of a "deliberately adopted system" which results in intentional systematic unequal treatment. *In re Tax Appeal of City of Wichita*, 274 Kan. 915, 920, 59 P.3d 336 (2002).

Once it is determined that a particular classification system arguably treats similarly situated persons differently and so implicates equal protection, a court must determine which level of scrutiny should be employed to evaluate the constitutionality of that classification.

"Federal and Kansas courts have long delineated three levels of scrutiny in equal protection cases: (1) the rational basis test to determine whether a statutory classification bears some reasonable relationship to a valid legislative purpose; (2) the heightened scrutiny test to determine whether a statutory classification substantially furthers a legitimate legislative purpose; and (3) the strict scrutiny test to determine whether a statutory classification is necessary to serve some compelling state interest." *In re Tax Appeal of CIG Field Services Co.*, 279 Kan. 857, 878, 112 P.3d 138 (2005) (citing *Bair v. Peck*, 248 Kan. 824, 830-31, 811 P.2d 1176 [1991]).

This court explained in *Peden* that "[t]he rational basis standard (sometimes referred to as the reasonable basis test) applies to laws which result in some economic inequality." 261 Kan. at 252. We

have recently clarified that this standard is to be employed in analyzing tax classifications. *In re Tax Appeal of CIG Field Services Co.*, 279 Kan. at 878. The rational basis standard is a "very lenient standard." See *Peden*, 261 Kan. at 252, 258. In *Leiker v. Gafford*, 245 Kan. 325, 363-64, 778 P.2d 823 (1989), this court explained the deference given to the legislature's determination under this "reasonable basis" test:

> "The 'reasonable basis' test is violated only if the statutory classification rests on grounds wholly irrelevant to the achievement of the State's legitimate objective. The state legislature is presumed to have acted within its constitutional power, even if the statute results in some inequality. Under the reasonable basis test, a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. [Citations omitted.]"

"Relevance is the only relationship required between the classification and the [legislature's] objective." *Stephenson v. Sugar Creek Packing*, 250 Kan. 768, 774, 830 P.2d 41 (1992). Nevertheless, a classification " 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' [Citation omitted.]" *Thompson v. KFB Ins. Co.*, 252 Kan. 1010, 1018, 850 P.3d 773 (1993).

When a plaintiff attacks a statute as facially unconstitutional under the Equal Protection Clauses, the plaintiff

> "must establish that no set of circumstances exist under which the [statute, regulation, or statutory] amendment would be valid. Simply pointing out that the amendment might not be rationally related to the state objectives sought under one set of facts is not enough to declare the amendment unconstitutional on its face." *Injured Workers of Kansas v. Franklin*, 262 Kan. 840, 850-51, 942 P.2d 591 (1997).

For this reason, "a plaintiff asserting the unconstitutionality of a statute under the rational basis standard 'ha[s] the burden "to negative *every conceivable basis* which might support [the classification]." ' [Citations omitted.]" (Emphasis added.) *Peden*, 261 Kan. at 253. Finally, it should be noted that courts give particular deference to the distinctions drawn by the legislature in enacting taxation legislation. Because "all taxation schemes carry some form of discriminatory impact," 261 Kan. at 260, courts have found that in

" ' "taxation, even more than in other fields, legislatures possess the greatest freedom in classification." ' [Citations omitted.]" *In re Tax Appeal of CIG Field Services Co.*, 279 Kan. at 878.

### Does the Statute Treat Arguably Indistinguishable Classes of People Differently, i.e., Are KPERS Participants Similarly Situated with All Other Public Employees?

As referenced above, a threshold requirement for stating an equal protection claim is to demonstrate that the challenged statutory enactment treats "arguably indistinguishable" classes of people differently. *Ross v. Moffit*, 417 U.S. 600, 609, 41 L. Ed. 2d 341, 94 S. Ct. 2437 (1974). Alternatively stated, it must be shown that the persons classified by the enactment are similarly situated to those who were excluded from the classification. See, *e.g.*, *Reed v. Reed*, 404 U.S. 71, 75-76, 30 L. Ed. 2d 225, 92 S. Ct. 251 (1971). The formula for determining whether individuals or entities are similarly situated for equal protection analysis is not always susceptible to ease of application. See, *e.g.*, *Coyne v. City of Somerville*, 972 F.2d 440, 444-45 (1st Cir. 1992). Here, Weisgerber argues without citation of any authority that K.S.A. 79-32,117(b)(vi) discriminates among "[a]ll affected . . . government workers who are funding their government sponsored retirement plans."

We conclude that Weisgerber's proposed class of "all public employees" is far too broad in defining those who are similarly situated; KPERS participants are simply not similarly situated with all other public employees. We note from a host of federal authorities that it is generally difficult to demonstrate this threshold requirement within a broad class of government employees due to overbreadth. See, *e.g.*, *Carter v. Arkansas*, 392 F.3d 965 (8th Cir. 2004) (public school employees not similarly situated with other state employees); *Arnold v. City of Columbia, Mo.*, 197 F.3d 1217 (8th Cir. 1999) (city police officers not similarly situated with other city employees); *Clark v. United States*, 691 F.2d 837 (7th Cir. 1982) (pensioners among state and private pension plans not similarly situated with federal pensioners).

Here, Weisgerber's proposed class of similarly situated persons includes employees who are eligible for disparate retirement plans

under state law. KPERS participants are eligible for defined benefit retirement plans, whereas the other public employees identified by Weisgerber are *not* eligible for defined benefit plans but instead have tax sheltered annuity plans; this distinction alone destroys any similarity across the purported class and poses an insurmountable hurdle for Weisgerber's equal protection claim. See *Ganley v. Minneapolis Park and Recreation Bd.*, 491 F.3d 743 (8th Cir. 2007) (holding members of two distinct pension plans were not similarly situated for equal protection analysis). We have analyzed in more detail the inherent differences between defined benefit plans and tax sheltered annuity plans as a part of our rational basis discussion below; suffice it to say here that these inherent differences cause us to find that the employees in Weisgerber's purported comparison class are *not* arguably indistinguishable.

Because Weisgerber has failed to demonstrate that all public employees are arguably indistinguishable, the add-back provision of K.S.A. 79-32,117(b)(vi) does not create a classification that results in disparate treatment of similarly situated individuals, and Weisgerber's equal protection claim fails on this basis alone. See *Smith*, 254 Kan. at 321-22.

### *Is There a Rational Basis for the Statute to Exclude Other Public Employees?*

Even if we were to conclude that KPERS participants are similarly situated with all other public employees, KDOR argues that the distinction drawn by K.S.A. 79-32,117(b)(vi) has a rationally based legitimate state interest. We agree.

KDOR urges us to compare the difference between the employee retirement plans offered to KPERS participants and those offered to the public employees who are not included within (*i.e.*, excluded from) the ambit of the challenged statute. All of the plans where employee contributions are subject to the add-back provision, including KPERS, are defined benefit pension plans under Internal Revenue Code (IRC) § 401(a), whereas the excluded public employees have tax sheltered annuity plans under IRC § 403(b). Compare 26 U.S.C. § 401(a) (2000 & Supp. IV 2004) with 26 U.S.C. § 403(b) (2000 & Supp. IV 2004). Defined benefit plans

provide pre-determined benefits to participants and their benefi-
ciaries dependent on employment characteristics (salary and length
of service, among others), but ultimate benefits are not determined
precisely by the amount contributed. In contrast, tax sheltered an-
nuity plans hold the precise contributions made by employees in
their name until retirement. Employee contributions to KPERS
are not earmarked for benefit obligations, but rather are combined
with the State's general revenues. Moreover, the State's general
fund is then obligated for KPERS benefits, enabling the State to
fulfill retirement obligations to all KPERS participants. See Att'y
Gen. Op. Nos. 94-59; 95-23.

We conclude that the fundamental distinction between the in-
cluded defined benefit plans, such as KPERS, and the excluded
tax sheltered annuity plans is that employee contributions to de-
fined benefit plans fund retirement programs with predetermined
benefits "for the purpose of effecting economy and efficiency in
the administration of governmental affairs." K.S.A. 74-4901. Tax-
ation of employee contributions to defined benefit plans through
the add-back mechanism of K.S.A. 79-32,117(b)(vi) serves to fur-
ther enhance the State's general fund, from which obligations to
such retirees will be fulfilled. The tax sheltered annuity plans of all
other public employees with contribution confined benefits do not
similarly implicate the State's general fund; these plans neither
contribute to the general fund nor are their benefits paid from the
general fund. This is unquestionably a legitimate legislative pur-
pose that survives equal protection scrutiny. See *Peden*, 261 Kan.
at 253; *Injured Workers of Kansas*, 262 Kan. at 850-51.

Weisgerber argues that this distinction—support for funding of
KPERS benefits from the general fund—has no clear support "in
the enabling legislation." This is unnecessary to a rational basis
analysis, however, because no evidence of a particular actual legit-
imate purpose in legislative history or elsewhere is necessary for a
legislative enactment to survive rational basis scrutiny. Courts are
free to consider whether any *potential* legitimate purpose exists to
support the legislative classification. *In re Tax Appeal of CIG Field
Services Co.*, 279 Kan. at 879. It is entirely irrelevant for consti-
tutional purposes whether the conceived reason for the challenged

distinction actually motivated the legislature. *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315, 124 L. Ed. 2d 211, 113 S. Ct. 2096 (1993).

KDOR has urged alternative grounds to support the legislative classification, but we need not consider these, having already concluded that there is a conceivable legislative basis for the differential treatment. See *Peden*, 261 Kan. at 253.

In summary, we conclude that K.S.A. 79-32,117(b)(vi) does not violate the Equal Protection Clauses of the state and federal Constitutions and BOTA's decision upholding the additional income assessment of income taxes, interest, and penalties to Weisgerber should be affirmed.

Affirmed.

DAVIS, J., not participating.

GREENE, J., assigned.