NOT DESIGNATED FOR PUBLICATION

No. 126,978

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TYLESHA PRYOR,
*Appellant*,

v.

TARGET CORPORATION,
*Appellee*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Oral argument held October 15, 2024. Opinion filed December 27, 2024. Affirmed.

*Jeff K. Cooper*, of Topeka, for appellant.

*Michael P. Bandre* and *Stephen P. Doherty*, of Hoffmeister & Doherty LLC, of Overland Park, for appellee.

Before COBLE, P.J., GARDNER, J., and CARL FOLSOM III, District Court Judge, assigned.

PER CURIAM: Tylesha Pryor was injured during the performance of her duties as an employee for the Target Corporation (Target). Pryor suffered from an umbilical hernia and underwent three surgeries to repair it. Pryor claimed that she suffered new and distinct injuries—myofascial pain and nerve injuries—from the initial hernia injury and the subsequent surgeries. The administrative law judge (ALJ) awarded Pryor compensation outside the scheduled injuries listed under K.S.A. 44-510d(b)(22), finding that Pryor's injuries went beyond the initial traumatic hernia. The Workers Compensation Board (Board) reversed the ALJ's decision, finding the medical testimony offered by

1

Pryor did not support the ALJ's decision. The Board found Pryor's injuries fell under K.S.A. 44-510d(b)(22) and ruled that she is only allowed compensation as prescribed under the scheduled injury list. Pryor appeals the Board's decision, raising two issues: (1) The Board erred in determining her impairment and limiting the benefits to K.S.A. 44-510d(b)(22), and (2) in the alternative, K.S.A. 44-510d(b)(22) is unconstitutional. After reviewing the entire record, we affirm the Board's decision and reject Pryor's constitutional challenge to K.S.A. 44-510d(b)(22).

FACTUAL AND PROCEDURAL BACKGROUND

*The Injuries and Surgeries*

Pryor began working for Target in November 2017 in its warehouse. All parties agree she sustained a work-related umbilical hernia in November 2018, while lifting some boxes. Pryor was seen by Dr. Brennan Dixon and underwent surgery to repair the hernia on January 7, 2019. She returned to work on regular duty about a month later.

On March 19, 2019, while Pryor was moving boxes, several boxes fell on her back. Pryor said she tried to shield her abdomen, but she experienced instant pain and aggravated symptoms throughout her abdomen when the boxes struck her. As a result, she visited Dr. Dixon, who diagnosed her with abdominal wall strain. Pryor also experienced pain in her lower back after the second injury. Pryor was seen by other medical professionals, but they had differing opinions regarding whether Pryor developed a new hernia, reinjured her previous hernia, or had some other issue resulting from the recent injury.

Pryor's pain in her abdomen persisted, and as part of her workers compensation claim, she met with two additional doctors: Dr. Howard Aks, at her attorney's request on

June 3, 2019; and Dr. Vito Carabetta, an independent medical examiner ordered by the ALJ, on September 2, 2020.

When Pryor was initially evaluated by Dr. Aks on June 3, 2019, he diagnosed her with: (1) Chronic abdominal pain, (2) probable myofascial pain of the abdominal musculature, (3) possible neuropathic pain, and (4) possible but doubtful recurrence of ventral hernia. Dr. Aks noted no hernia was visible at the time of the evaluation. Dr. Aks opined that the second injury in March 2019 was the prevailing factor causing her new abdominal pain and recommended treatment including referral to a surgeon.

After Dr. Carabetta first evaluated Pryor, he opined that the prevailing cause for Pryor's pain was the original injury in November 2018, not the incident in March 2019. He believed the incident in March was an aggravating factor that hampered the standard recovery from the first injury. Dr. Carabetta questioned the integrity of the hernia mesh from the first repair surgery, and he recommended Pryor meet with a surgeon regarding the myofascial pain in her abdominal wall and for further treatment recommendations.

Pryor received an ultrasound on November 9, 2020, which revealed a small supraumbilical ventral hernia that required surgery. Pryor underwent a second hernia surgery on January 6, 2021. During this second surgery, the surgeon removed the mesh previously placed during her first hernia surgery and repaired the umbilical hernia. When Pryor's symptoms continued, she had a third hernia repair surgery on August 11, 2021.

*Subsequent Examinations by Medical Professionals*

At her deposition, Pryor testified she continued to experience pain in her abdomen, her sides, lower back, and her groin area. She also experienced muscle spasms in the surgical scar area below her belly button. Pryor was unable to lift anything heavy, twist or turn, kneel, squat, or bend without experiencing pain and muscle spasms.

Dr. Aks examined Pryor again in November 2021 at the request of her attorney. Pryor complained about abdominal pain and groin pain, along with pain and discomfort in her lower and mid back area. Based on this second evaluation, Dr. Aks diagnosed Pryor with: (1) Chronic intractable abdominal pain post multiple abdominal hernia repairs, (2) myofascial pain involving the abdominal wall, (3) possible neuropathic pain from umbilical hernia repairs, (4) bilateral flank pain, muscular in origin, and (5) lower back pain, probably muscular in origin. Dr. Aks opined that the original injury Pryor sustained in November 2018 and the consequences of the surgeries were the prevailing factors for her chronic intractable abdominal pain. Dr. Aks did not believe the injury sustained in March 2019 was an aggravation of her previous abdominal wall issue. During Dr. Aks' later deposition, when asked about his reference to Pryor's neuropathic pain, counsel said, "[W]hen you refer to the neuropathic pain, you refer to it as possible, not necessarily probable, is that also accurate?" Dr. Aks answered, "That is correct."

Dr. Aks calculated an impairment rating of 13% based on the guidelines provided in the Sixth Edition of the American Medical Association (AMA) Guides to the Evaluation of Permanent Impairment (6th ed. 2008).

On the request of the ALJ, Dr. Carabetta examined Pryor for a second time in June 2022. The AJL asked Carabetta to assess if there were any other injuries Pryor suffered because of the work injuries, but the second evaluation was solely limited to Pryor's complaint of back pain. Dr. Carabetta opined that he had trouble understanding the prevailing factor for the back pain because Pryor did not mention it during the previous examination. Dr. Carabetta also stated Pryor's back pain was not related to the work injuries and that it may have developed after the injuries, but its correlation with the work injuries remained undefined. According to Dr. Carabetta, the mesh removal was necessary following complications from the first surgery. Dr. Carabetta agreed that removal of the mesh affected Pryor's abdominal tissue and muscle, causing significant impacts such as a change in the physical structure of the abdominal tissue and bruising

4

and bleeding that would heal over time. He opined that such an injury was separate and distinct flowing from and as a result of the first surgery, but different than the hernia. Dr. Carabetta opined Pryor's abdominal region did not improve at all and would require her to be on continued restrictions.

Dr. Carabetta was not asked to provide an impairment rating by the ALJ, and when asked during deposition, he stated that it was outside his expertise to assess the impairment ratings. During his deposition, Dr. Carabetta admitted he did not examine Pryor's abdomen during his second exam because he was only asked to assess other injuries.

*The ALJ and Board Rulings*

The ALJ found there was sufficient evidence supporting the existence of separate and distinct injuries—myofascial pain and nerve damage—resulting from the hernia injuries and surgeries, thus making it a body as a whole injury. The ALJ determined that Pryor has a 13% BAW permanent partial impairment and a 48% work disability. The ALJ awarded Pryor $100,076.05 in permanent partial disability, as amended by the maximum allowed by K.S.A. 44-501f.

Target filed a petition for review of the ALJ's award to the Board. Target alleged that the ALJ exceeded his jurisdiction by awarding compensation outside the statutory limit for hernias, as prescribed by K.S.A. 44-510d.

The Board reversed the ALJ's order, finding that Pryor failed to prove she suffered a permanent impairment related to a nerve injury resulting from her work-related accident. The Board considered both Dr. Aks' and Dr. Carabetta's opinions but found Dr. Carabetta's opinion more credible and gave weight to his opinion that Pryor's symptoms

5

were caused solely by the initial hernia injury. The Board modified Pryor's award to a total of $27,923.95, in accordance with K.S.A. 44-510d(b)(22).

Pryor timely appeals the Board's reversal.

THE BOARD'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Pryor argues on appeal that the Board's decision reversing the ALJ's award is not supported by substantial evidence. Naturally, Target disagrees.

*Legal Standards Applicable to Review of Workers Compensation Cases*

The Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., governs our review of cases arising under the Workers Compensation Act (Act), K.S.A. 44-501 et seq. K.S.A. 44-556(a). The standard for our review varies depending on the issue raised. See K.S.A. 77-621 (defining and limiting scope of review of administrative decisions under the KJRA).

Appellate courts review a challenge to the Board's factual findings in light of the record as a whole to determine whether the findings are supported to the appropriate standard of proof by substantial evidence. K.S.A. 77-621(c)(7). "Substantial evidence" refers to "'evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis [of fact] from which the issue raised could be easily resolved. [Citation omitted.]'" *Rogers v. ALT-A&M JV*, 52 Kan. App. 2d 213, 216, 364 P.3d 1206 (2015).

Under the KJRA, when determining factual questions, an appellate court's responsibility is to review the record as a whole to determine whether the Board's factual determinations are supported by substantial evidence.

6

"This analysis requires the court to (1) review evidence both supporting and contradicting the agency's findings; (2) examine the presiding officer's credibility determinations, if any; and (3) review the agency's explanation as to why the evidence supports its findings. The court does not reweigh the evidence or engage in de novo review. [Citations omitted.]" *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014).

See K.S.A. 77-621(d). On appeal, the burden of proving the invalidity of the agency action rests on the party asserting the invalidity. K.S.A. 77-621(a)(1); *EagleMed v. Travelers Insurance*, 315 Kan. 411, 419, 509 P.3d 471 (2022).

*Legal Standards Applicable to Traumatic Hernia Injury*

The amount of compensation an injured worker is entitled to receive is dictated by the Act. Workers who suffer from temporary or permanent disabilities are compensated according to K.S.A. 44-510c. Compensation for workers suffering from permanent partial disabilities is determined under K.S.A. 44-510d and K.S.A. 44-510e. K.S.A. 44-510d provides a schedule of compensation for certain permanent partial disabilities which calculates the injured worker's award, while K.S.A. 44-510e calculates awards for disabilities not included in the K.S.A. 44-510d scheduled list.

A traumatic hernia injury is a scheduled injury under K.S.A. 44-510d. In pertinent part, K.S.A. 44-510d(b)(22) states:

"For traumatic hernia, compensation shall be limited to the compensation under K.S.A. 44-510h and 44-510i, and amendments thereto, compensation for temporary total disability during such period of time as such employee is actually unable to work on account of such hernia, and, in the event such hernia is inoperable, weekly compensation during 12 weeks, except that, in the event that such hernia is operable, the unreasonable refusal of the employee to submit to an operation for surgical repair of such hernia shall deprive such employee of any benefits under the workers compensation act."

7

The plain language of the provision provides that an employee suffering from a hernia injury is unable to collect more than temporary total disability under the calculations prescribed by K.S.A. 44-510h and K.S.A. 44-510i.

But K.S.A. 44-510e provides for compensation for a whole body injury resulting in temporary or permanent partial general disability that is not covered by the schedule in K.S.A. 44-510d.

*Pryor fails to show how the Board's decision was unsupported.*

Here, Pryor argues she is entitled permanent partial disability compensation under K.S.A. 44-510e and not temporary total disability generally provided for a hernia under K.S.A. 44-510d(b)(22) because her myofascial pain and nerve damage are separate and distinct injuries stemming from the original hernia injury and the subsequent surgeries. Pryor claims the two doctors' undisputed testimony shows that her myofascial pain and nerve damage resulting from the hernia surgeries are in fact separate and distinct from her original injury. She asserts the ALJ's decision to award her compensation was correct and factually supported.

The State concedes that for a traumatic hernia to be deemed a whole body impairment rather than a scheduled injury under K.S.A. 44-510d(b)(22), there must be a separate and distinct injury flowing from the initial hernia injury. But it argues the Board's decision to reverse the ALJ's decision was correct because Pryor failed to prove that she suffered a new and distinct injury.

Under Kansas law, "[s]cheduled injuries are the general rule and nonscheduled injuries are the exception. K.S.A. 44-510d calculates the award based on a schedule of disabilities. If an injury is on the schedule, the amount of compensation is to be in accordance with K.S.A. 44-510d." *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, Syl.

8

¶ 7, 154 P.3d 494 (2007). But under the secondary injury rule, an injured worker may "receive compensation for all of the natural consequences arising out of an injury, including any new and distinct injuries that are the direct and natural result of the primary injury." 283 Kan. at 515. So, the question before us is: Did Pryor sustain only a hernia or a hernia with additional injuries? The burden is on Pryor to prove that she sustained a new and distinct injury that resulted from her original scheduled injury of traumatic hernia.

Pryor relies on a previous decision by our court in *Lozano v. Excel Corp.*, 32 Kan. App. 2d 191, 193, 81 P.3d 447 (2003). In *Lozano*, we found that nerve injuries which develop as a natural consequence of a hernia are not the same injury as the hernia itself and are not governed by K.S.A. 44-510d(b)(22), so they are separately compensable under the Act. In *Lozano*, the claimant suffered from continuing pain following a surgery to repair a hernia caused by his work. The claimant underwent additional surgeries for the purpose of "'exploration of [the] left inguinal area, neurolysis of ilioinguinal and genitofemoral nerve[s] and repair of [the] hernia in layers.'" 32 Kan. App. 2d at 191. The claimant ultimately suffered nerve damage from the surgery and was awarded a 10% permanent partial disability. Upholding the Board's decision, our court found the injury was no longer a hernia injury but a new unscheduled nerve injury, granting the claimant compensation. 32 Kan. App. 2d at 193-95.

Similarly, in *Goudy v. Exide Technologies*, No. 106,385, 2012 WL 3822798, at *10 (Kan. App. 2012) (unpublished opinion), another panel of our court upheld the Board's finding that the injury sustained by Goudy was a separate and distinct nonscheduled injury—ilioinguinal nerve damage—stemming from his hernia injury from work. But in *Goudy*, two doctors agreed he suffered from ilioinguinal neuralgia, so the court found substantial competent evidence to support the Board's decision that Goudy suffered a "separate and distinct nonscheduled injury, ilioinguinal nerve damage, which

9

could entitle him to work disability benefits beyond those" in the schedule. 2012 WL 3822798, at *10.

In his decision here, the ALJ found there was sufficient evidence from Dr. Aks' and Dr. Carabetta's opinions supporting that Pryor's myofascial pain was solely the result of the hernia and the subsequent repair surgeries. Moreover, the ALJ found that sufficient evidence showed that Pryor suffered nerve damage to her abdomen, which was a separate and distinct injury from the original hernia. Target rebutted Dr. Aks' opinion, stating that Dr. Aks only hinted at the possibility of neuropathic pain, but the ALJ concluded that Dr. Aks' report clearly included neuropathic injuries in determining the overall impairment rating. The ALJ acknowledged that Dr. Carabetta did not confirm any nerve damage, but only because he was not examining or considering any body parts other than Pryor's back pain. The ALJ found that the probable evidence supports "[Pryor's] original and subsequent hernia surgeries have resulted in a separate and distinct injuries of myofascial pain and nerve damage in [her] abdomen."

The Board disagreed and found Dr. Aks' testimony during the deposition contradictory, as his report only mentioned *possible* neuropathic pain, not probable. The Board concluded that Dr. Aks did not provide a factual opinion suggesting Pryor "suffered nerve damage as a result of her work-related accident within a reasonable degree of medical probability." Rather, the Board found more credible Dr. Carabetta's opinion that Pryor's symptoms were solely caused by the initial hernia injury, from which she had not fully recovered. Based on the "greater weight of the credible evidence" from Dr. Carabetta's opinion, the Board unanimously held that Pryor failed to prove she suffered a permanent impairment related to a nerve injury and was only entitled to a temporary total disability compensation under K.S.A. 44-510d(b)(22), reversing the ALJ's decision.

10

Dr. Aks' and Dr. Carabetta's medical opinions are undisputed as no other medical opinions were obtained. But Pryor's claim that both doctors concluded the myofascial pain and nerve damage constituted separate and distinct injuries is unsupported by the record. Both doctors did suggest that the abdominal pain in her abdomen resulted from her original hernia injury and the subsequent repair attempts. But Dr. Aks never conclusively opined that the myofascial pain resulting from the hernia was a new and distinct injury. Dr. Carabetta stated that the tissue and muscle damage from the removal of the mesh during the second surgery could be a separate and distinct injury flowing from the hernia surgery which would heal over time, but did not confirm that the ongoing myofascial pain was a new and distinct injury.

Also, Dr. Aks did acknowledge that there was "[p]ossible neuropathic pain" in his written impressions immediately following Pryor's second visit. But Pryor fails to designate anywhere in the record where Dr. Aks definitely concluded her nerve pain was a new and distinct injury flowing from the hernia and subsequent surgeries. On our review of the record, Dr. Aks never opines as much. In fact, when asked directly during his deposition, Dr. Aks clarified that he referenced her neuropathic pain as possible, not necessarily probable. Likewise, Dr. Carabetta never opined that there was nerve damage following the hernia surgeries and only confirmed that the abdominal tissue and muscles were damaged by the first surgery.

In that context, this case is more similar to *Rondon v. Tyson Fresh Meat, Inc.*, No. 98,101, 2008 WL 1722253 (Kan. App. 2008) (unpublished opinion). In *Rondon*, this court found that Rondon's claim of nerve damage was not supported by substantial evidence because three medical professionals provided conflicting conclusions. 2008 WL 1722253, at *4. Two out of the three doctors opined there was no nerve damage, and the Board rejected the other doctor's conclusion that Rondon suffered nerve damage. Our court affirmed the Board's decision and held Rondon did not suffer a new and distinct

injury for which he was entitled to compensation under the Act. 2008 WL 1722253, at *5.

Here, the Board weighed the conflicting testimony of Dr. Aks and Dr. Carabetta and found there were no new or distinct injuries for which Pryor is entitled to compensation. This court refrains from reweighing the evidence or making credibility determinations. *Petromark Drilling*, 299 Kan. at 795. On our review of the record, we find Pryor fails to provide evidence to support her theory that she suffered permanent impairment related to nerve damage as a result of her work-related hernia injury.

For the preceding reasons, when viewed in the light of the record as a whole, substantial evidence supported the Board's decision that Pryor was not entitled to compensation other than what is prescribed under K.S.A. 44-510d(b)(22). As a result, we affirm the Board's reversal of the ALJ's award of compensation.

Is K.S.A. 44-510d(b)(22) UNCONSTITUTIONAL?

Pryor next argues K.S.A. 44-510d(b)(22) is unconstitutional and violates section 18 of the Kansas Constitution Bill of Rights because it does not provide her an adequate remedy for her injuries. She contends it limits a worker who sustains a hernia that is operable to only temporary benefits during the time off work, while no other scheduled injury is limited to temporary total disability.

*Applicable Legal Standards*

Constitutional grounds for reversal brought for the first time on appeal normally are not properly before an appellate court for review. *Miller v. Bartle*, 283 Kan. 108, 119, 150 P.3d 1282 (2007). But we recognize that the Board is not a Kansas Constitution Article 3 court under our Kansas Constitution, and as a result, it does not have

12

jurisdiction to consider constitutional claims. *Rondon*, 2008 WL 1722253, at \*5 (citing *In re Tax Appeal of Weisgerber*, 285 Kan. 98, 169 P.3d 321 [2007]). And it is admittedly unclear whether a better course of action for the parties in this situation would be to raise the issue of constitutionality before the administrative tribunal to avoid the question of preservation on appeal. See *Rondon*, 2008 WL 1722253, at \*5 (citing *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 633–34, 176 P.3d 938 [2008] (citing *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 776, 148 P.3d 538 [2006]; *State v. Shopteese*, 283 Kan. 331, 339, 153 P.3d 1208 [2007]).

In any event, because Pryor's constitutional claim involves only a question of law arising on proven or admitted facts which could be finally determinative of the question, an exception applies, and we will consider her constitutional claim. *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008).

"[I]nterpretation of [the] Act and the administrative regulations promulgated to implement the Act's provisions are questions of law subject to de novo review." *EagleMed*, 315 Kan. at 420. "When exercising unlimited review on questions of statutory interpretation, an appellate court owes no deference to interpretations given to the Act by the [Board]." *Estate of Graber v. Dillon Companies*, 309 Kan. 509, Syl. ¶ 2, 439 P.3d 291 (2019). Further, "[u]nder our state's separation of powers doctrine, courts presume a statute is constitutional and resolve all doubts in favor of the statute's validity. A statute must clearly violate the constitution before it may be struck down." *Miller v. Johnson*, 295 Kan. 636, Syl. ¶ 1, 289 P.3d 1098 (2012).

*Pryor's Constitutionality Challenge Fails.*

In *Injured Workers of Kansas v. Franklin*, 262 Kan. 840, Syl. ¶ 10, 942 P.2d 591 (1997), our Supreme Court reviewed the 1993 legislative changes to the Act and found the amendments both as a whole and individually to be constitutional. As part of that

13

decision, the court established a two-part framework for considering these constitutional challenges:

> "'If a remedy protected by due process is abrogated or restricted by the legislature, 'such change is constitutional if "[1] the change is reasonably necessary in the public interest to promote the general welfare of the people of the state," and [2] the legislature provides an adequate substitute remedy' to replace the remedy which has been restricted." [Citations omitted.]'" 262 Kan. at 854 (quoting *Lemuz v. Fieser*, 261 Kan. 936, 946-47, 933 P.2d 134 [1997]).

Then, in *Pardo v. United Parcel Service*, 56 Kan. App. 2d 1, 422 P.3d 1185 (2018), our court considered whether the Act's requirement under K.S.A. 44-510d(b)(23) that the Sixth Edition of the AMA Guides be used to calculate awards was unconstitutional. Reviewing *Pardo*'s constitutional challenge under the *Injured Workers of Kansas* test, our court held that Pardo's substantial due process rights were violated and found that the requirement to use the Sixth Edition of the AMA Guides was unconstitutional. 56 Kan. App. 2d at 25.

Pryor urges us to apply the *Pardo* and *Injured Workers of Kansas* test to her challenge, claiming K.S.A. 44-510d(b)(22) unconstitutionally limits her recovery to compensation for medical bills and temporary total disability benefits but precludes recovery for any award of permanent partial impairment without any adequate substitute remedy. But we find Pryor's arguments unconvincing. First, we question the applicability of the *Pardo* or *Injured Workers of Kansas* test at all, given that there have been no recent changes to the Act which prompted Pryor's constitutional challenge here. Even so, when we apply this test, Pryor's challenge fails on its merits.

As we have noted, this is not a situation in which the Legislature has recently amended K.S.A. 44-510d(b)(22). In fact, there has been no modification to the traumatic hernia provision of the Act for over 30 years, so no change has occurred which can be

14

said to not have promoted the general welfare of the State. And, since 1911, the Act itself has been through numerous amendments and endured challenges to its constitutionality. See *Johnson v. U.S. Food Service*, 56 Kan. App. 2d 232, 239-46, 427 P.3d 996 (2018). We have no trouble finding K.S.A. 44-510d(b)(22) is reasonably necessary to promote the general welfare of the people and passes the first prong of the *Injured Workers of Kansas* test.

That said, as for the second prong of the test, we recognize there is a statutory limit in the recovery for traumatic hernia. However, for those claims in which the claimants prove with substantial medical evidence that they have injuries that are new and distinct injuries but are the direct and natural result of the original hernia, those distinct injuries are, and have been, additionally compensable under the existing statutory scheme. See *Lozano*, 32 Kan. App. 2d at 193; *Goudy*, 2012 WL 3822798, at *10. Pryor's problem in this case is not that a remedy was not available to her—her issue was, quite simply, that she failed to secure the evidence to meet her burden of proof.

A more recent constitutional challenge to the Act is persuasive. In *Perez v. National Beef Packing Co*., 60 Kan. App. 2d 489, 494 P.3d 268 (2021), a panel of our court reviewed a challenge to the denial of an employee's claim for compensation for a total knee replacement. One of the issues examined in the case was the constitutionality of K.S.A. 2020 Supp. 44-508(f)(2), which Perez argued was unconstitutional as applied to him because it made the Act an inadequate remedy for the aggravation of a preexisting condition. Although his challenge involved a different section of the Act, the court's analysis is on point: "It was *possible* for Perez to fully recover for his claims under the Act; he simply failed to meet his burden of proof." 60 Kan. App. 2d at 504.

Here, Pryor recovered some compensation for her work-related hernia, but not as much as she would like to have recovered, because the Board rejected her claim that her ongoing pain was a separate and distinct injury flowing from her original hernia given the

15

medical evidence she provided. Under these circumstances, it is incorrect to say that Pryor could not have recovered under the Act as a matter of law.

Affirmed.